## CLARK *v.* KANSAS CITY.-

ERROR TO THE SUPREME COURT OF THE STATE OF KANSAS.

No. 268. Argued November 13, 1899. — Decided January. 15, 1900.

The provision in section 1 of chapter 74 of the Laws of Kansas of 1891, authorizing certain first-class cities to take in described tracts of land in territory adjoining or touching the city limits and make them a part of the city by ordinance, and providing that "nothing in this act shall be taken or held to apply to any tract or tracts of land used for agricultural purposes, when the same is not owned by any railroad or. other corporation" does not conflict with. any provision of the Constitution of the United·States, when exercised by such a city to take in lands belonging to a.railroad company which are not used for agricultural purposes, but are occupied by the company for railroad purposes.

THIS case was here once before on writ of error to review a judgment of the Supreme Court of Kansas reversing a judgment of the *nisi prius* court, sustaining a demurrer to. the petition of plaintiffs. *Clark* v. *Kansas City*, 172 U. S. 334.

The writ was dismissed on the ground that the judgment was not final. On the return of the case to the Supreme Court of the State such proceedings were had there and by its direction in the trial court that a final judgment was entered, denying the relief prayed for, which judgment the Supreme Court affirmed, and the case was then brought here.

The question presented is the constitutionality of a statute of the State and the validity of an ordinance passed by Kansas City under the statute. Kansas Laws of 1891, 133, c. 74; act of March 10, 1891. The statute is as follows:

"Cities of the First Class.

"An act relating to certain cities of the first class, and the adding thereto certain adjoining territory.

"*Be it enacted by the Legislature of the State of Kansas:* SEC. 1. That whenever any territory adjoining or touching the city limits of any city of the first class having a population of 30,000 inhabitants or more shall be subdivided into lots and blocks, or whenever any unplatted tract of land shall lie upon or mainly within any such city, or is so situated as to be bounded on three fourths of its boundary line by platted territory of or adjacent to such city, or by the boundary line of such city, or by both, the same may be added to and made a part of the city by ordinance duly passed; which ordinance shall describe the territory by giving the name of the subdivision or addition as platted, and by giving the metes and bounds of such unplatted tract, or by giving the metes and bounds of each tract and plat so taken in separately, or of the entire tract or tracts so taken in, with the section, town, range and county in which the same is located, without further proceedings; *but nothing in this act shall be taken or held to apply to any tract or tracts of land used for agricultural purposes when the same is not owned by any railroad or other corporation.*"

&ast; &ast; &ast; &ast; &ast;

The following is the ordinance:

" Ordinance No. 2163.

" An ordinance adding certain lands therein described, known as the Union Pacific lands, to and making the same a part of the city of Kansas City, Kansas.

" Whereas, A certain unplatted territory belonging to the Union Pacific Railroad Company lies upon and mainly within the city of Kansas City, Kansas, and is so situated as to be bounded on three-fourths ($\frac{3}{4}$) its boundary line by platted territory of, and adjoining to said city; which said railroad land, by virtue of its location, enjoys the benefits of said city without sharing its burdens: Now, therefore,

" *Be it ordained by the Mayor and Councilmen of the City of Kansas City, Kansas:* Sec. 1. That the following described territory, to wit: . . . Said tracts being contiguous and containing in the aggregate one hundred and seventy-two (172) acres, be and hereby is added to and made a part of the city of Kansas City, Kansas.

" Sec. 2. This ordinance shall take effect and be in force from and after its passage and publication in the Kansas City Gazette."

After passage of the ordinance the city levied taxes on the lands, and this suit was brought to restrain their collection. The petition presented the facts, and contained the following allegations:

" Nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction equal protection of the laws.

" And plaintiffs are advised and so charge the fact to be that in so far as said statute attempts to authorize the taking of said lands within the limits of Kansas City, Kansas, as attempted in said ordinance, Exhibit ' A,' it is unconstitutional, null and void, in this, to wit:

" That by reason of that portion of the act which excepts from its operation any tract or tracts of land used for agricultural purposes, when the same is not owned by any railroad or other corporation, it is in violation of that part of the Fourteenth Amendment to the Constitution of the United

States, which reads as follows: 'Nor shall any State deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction equal protection of the laws.'.

"Plaintiffs further allege upon information and belief that there was not at the time of the passage of said chapter 74 of the Session Laws of Kansas for 1891 any city of thirty thousand (30,000) inhabitants or more in the State of Kansas where the conditions referred to in the first part of the said act permitting the adding of additional territory to a city by the passage of an ordinance merely existed; and plaintiffs are advised, and so charge the fact to be, that said act of the legislature, while purporting to be a general act, was intended solely to apply to the lands attempted to be taken within the limits of said Kansas City, Kansas, by said ordinance, 'Exhibit A.'"

The property over which the extension was made was actually used in part for railroad purposes, and consisted of road bed and right-of way, main and side tracks, buildings and improvements. The portions not actually used for railroad purposes, the petition alleged, were vacant and unoccupied lands, which were held and possessed by the railroad company for railroad purposes.

*Mr. N. H. Loomis* for plaintiffs in error. *Mr. Winslow S. Pierce* and *Mr. A. L. Williams* were on his brief.

*Mr. T. A. Pollock* and *Mr. F. D. Hutchings* for defendants in error.

MR. JUSTICE MCKENNA, after making the above statement, delivered the opinion of the court.

The statute excepts from its operation lands used for agricultural purposes if owned by individuals. It includes such lands if owned by corporations. It is hence contended by plaintiff in error that the statute discriminates between the owners of agricultural lands, and between them again and the

owners of all other lands, and infringes thereby the provisions of the Constitution of the United States which guarantees to all persons the equal protection of the laws.

Of the discrimination between owners of agricultural lands the Supreme Court of Kansas said the defendants in error [plaintiffs here] cannot be heard to complain. "Their lands are not agricultural lands; at least, they do not allege them to be such lands, but, on the contrary, allege that parts of them are used for railroad purposes, and that the remaining portions are vacant and unoccupied lands, held and possessed for railroad purposes. Owning no agricultural land, the defendants in error are not affected by the discrimination which the statute makes between the different classes of owners of such kind of land, and they cannot therefore be heard to complain on that score. 'A court will not listen to an objection made to the constitutionality of an act by a party whose rights it does not affect and who has therefore no interest in defeating it.' Cooley's Constitutional Limitations, 6th ed., 196." *Supervisors* v. *Stanley*, 105 U. S. 305.

We concur in this view, and it would be difficult to add anything to its expression. The discrimination occurs only in a particular use of the lands, and it would seem obvious that such use must be shown to make a cause of action — a right infringed and to be redressed. If the lands of the plaintiff belonged to an individual they would be subject to the statute. Where, then, is the discrimination? In that, it is claimed, if the lands were used for agriculture, being owned by a corporation, they would be subject to the statute, but would not be if owned by an individual. But that is not a discrimination immediate and actual against plaintiff in error. It does not now, and there is nothing in the record to show that it ever will exist. Not a law alone, but a law and its incidence are necessary to a justiciable right or injury; and it therefore follows if plaintiff has a grievance under the statute which this court can redress, it comes from the discrimination between agricultural lands and other lands — a cause of action, not because the plaintiff is a corporation, but because it is an owner of such lands, and one which it would have even if it were an individual.

The answer to that charge depends upon the power of the State to classify objects of legislation; necessarily a broad power, and one which this court has so many times decided exists, and so many times has defined and illustrated the limits upon it of the provision of the Constitution of the United States invoked by plaintiff in error, that farther definition would seem impossible, and any new instance of its application not without exact or analogous example in some decided case.

The reasoning of the cases we need not repeat. It is enough to say that the rule of the Constitution leaves to the discretion and wisdom of the State a wide latitude as far as interference by this court is concerned. It is not a substitute for municipal law; it does not invest power in this court to correct the impolicy and injustice of state laws, and the equality it prescribes is not for persons merely as such, but according to their relations. "In some circumstances it may not tax A more than B, but if A be of a different trade or profession than B, it may. And it matters not of taxation if A be a different kind of corporation than B it may subject A to a different rule of responsibility to servants than B, *Missouri Pacific Railway* v. *Mackey*, 127 U. S. 205; to a different measure of damages than B, *Minneapolis & St. Louis Railway* v. *Beckwith*, 129 U. S. 26; and it permits special legislation in all its varieties. *Missouri Pacific Railway* v. *Mackey*, 127 U. S. 205; *Minneapolis & St. Louis Railway* v. *Herrick*, 127 U. S. 210; *Duncan* v. *Missouri*, 152 U. S. 377." *Magoun* v. *Illinois Trust & Savings Bank*, 170 U. S. 283.

And these principles have been affirmed in later cases, and a classification based on the difference between fire insurance and other insurance has been sustained; also on a difference between railroad and other corporations and of persons. *Orient Insurance Co.* v. *Daggs*, 172 U. S. 557; *Tullis* v. *Lake Erie & Western Railroad*, 175 U. S. 348, decided at the present term.

In *Atchison, Topeka &c. Railroad* v. *Matthews*, 174 U. S. 96, the majority of the court decided that in consequence of the great peril and possibility of fires being communicated by

the locomotives of railroad corporations, it was in the power of the State of Kansas to impose on them, in a suit successful against them, an attorney's fee, and not impose it on an unsuccessful plaintiff. It was said by Mr. Justice Brewer, after a review of the cases that —

"It is the essence of a classification that upon the class are cast duties and burdens different from those resting upon the general public. Thus, when the legislature imposes on railroad corporations a double liability for stock killed by passing trains, it says, in effect, that if suit be brought against a railroad company for stock killed by one of its trains it must enter into the courts under conditions different from those resting on ordinary suitors. If it is beaten in the suit it must pay not only the damage which it has done, but twice that amount. If it succeeds it recovers nothing. On the other hand, if it should sue an individual for destruction of its live stock it could under no circumstances recover any more than the value of that stock. So that it may be said in matter of liability, in case of litigation, it is not placed on an equality with other corporations and individuals; yet this court has unanimously said that this differentiation of liability, this inequality of right in the courts, is of no significance upon the question of constitutionality. Indeed, the very idea of classification is that of inequality, so that it goes without saying that the fact of inequality in no manner determines the matter of constitutionality." 174 U. S. 106.

In the case at bar the distinction is between tracts of agricultural lands in a certain relation to cities and lands used for other purposes in such relation.

We think the distinction is justified by the principle of the cases we have cited. That principle leaves to the State the adaptation of its laws to its conditions. The growth of cities is inevitable, and in providing for their expansion it may be the judgment of an agricultural State that they should find a limit in the lands actually used for agriculture. Such use it could be taken for granted would be only temporary. Other uses, certainly those to which the plaintiff puts its lands, can receive all the benefits of the growth of a city and not be

moved to submit to the burdens. Besides, such uses or manufacturing uses adjacent to a city may, for its order and health, need control. Affecting it differently from what farming uses do may justify if not require their inclusion within the municipal jurisdiction.

We think, therefore, that within the latitude which local government must be allowed the distinction is not arbitrary, and infringes no provision of the Constitution of the United States.                                   *Judgment affirmed.*