Argued June 30, 1920, reargued February 21, demurrer to writ overruled and judgment for plaintiffs, April 27, 1922.

## WEST ET AL. *v.* KOZER.

(206 Pac. 542.)

**Master and Servant—Acceptance of Compensation Act a Contract.**

1. Where an employee and an employer have accepted the Workmen's Compensation Act, there is a contract between the employee, the employer, and the state, that injured workman should be paid out of the fund provided for by the act.

Admiralty — Master and Servant — Workmen's Compensation Act Constitutional.

2. The Workmen's Compensation Act, which is not compulsory but permits an employee and employer doing business in the state upon navigable waters to contract as to compensation for injuries resulting from accidents in course of employment, is not unconstitutional, as interfering with the jurisdiction of courts of admiralty.

Original proceedings in *mandamus.*

JUDGMENT FOR PLAINTIFF.

For plaintiffs there was a brief and oral argument by *Mr. W. C. Winslow, Mr. C. C. Page* and *Mr. James B. Kerr.*

For defendant there was a brief over the name of *Mr. George M. Brown,* former Attorney General, with an oral argument by *Mr. Joseph A. Benjamin,* Assistant Attorney General.

*Mr. James B. Kerr* and *Mr. Charles A. Hart, Amici Curiae,* on briefs.

McBRIDE, J.—These cases all arise upon *mandamus* to compel the Secretary of State to issue warrants for the sum awarded by the state Industrial Accident Commission as compensation to various parties for injuries, some resulting in death, and others being of a minor character, which injuries were sustained in the course of employment upon the navigable waters of the United States and within the State of Oregon. Five different occupations are involved: (1) shipbuilding work after launching; (2) ferry operation across the Willamette River; (3) stevedoring work on board a sea-going vessel, under contract of employment with a stevedoring company

2. Maritime employees as within purview of Workmen's Compensation Act, see notes in Ann. Cas. 1916B, 88, 280; Ann. Cas. 1917E, 919; Ann. Cas. 1918B, 661.

operating in Portland, Oregon; (4) cannery work including operation of a motor-boat on the waters of the Columbia River and within the boundaries of the State of Oregon; and (5) freight transportation work including the operation of a steamboat upon the waters of Coos Bay, in Oregon.

1. In all of these cases the injuries were the result of accident and no questions of maritime tort are involved. In each instance the state Industrial Accident Commission awarded compensation, and in every case the employer and the injured employee had accepted the provisions of the State Workmen's Compensation Act and paid the sums required thereunder, so that there is no doubt of the existence of a contract between the employer, the employee and the state, that in case of injury to the employee his compensation should be adjusted and paid from the fund provided in that act: *American Radiator Co. v. Rogge,* 86 N. J. L. 436 (92 Atl. 85, 94 Atl. 85); *Sexton* v. *Newark Dist. Telegraph Co.,* 84 N. J. L. 83–100, 86 Atl. 451); *Gooding* v. *Ott,* 77 W. Va. 487 (87 S. E. 862, L. R. A. 1916D, 637). Unlike the compensation acts of most of the states, compliance with the act is not compulsory, but voluntary, and the right to participate in the fund depends upon the actual or implied assent of the employer and the employee and their contribution to the fund. On principle it is difficult to see why a law which permits an employer and an employee with the financial assistance of the state to contract with each other as to the measure of the employee's compensation in case he should sustain injury while in the course of his employment, in any way trenches upon the constitutional jurisdiction of the courts of admiralty. But certain expressions used by the Su-

preme Court of the United States in cases which we shall hereinafter discuss, which expressions were entirely proper when considered in connection with the matters then being treated, left such doubt in the mind of the Secretary of State that he did not feel justified in issuing warrants for the awards in the cases here involved until the law in the respects mentioned should be declared by this court.

We shall now consider the principal cases which have been supposed to militate against the constitutionality of any application of the workmen's compensation law to instances like those involved in the present contention. The first case is *Southern Pacific Co.* v. *Jensen,* 244 U. S. 205, (61 L. Ed. 1086, Ann. Cas. 1917E, 900, L. R. A. 1918C, 451, 37 Sup. Ct. Rep. 524). That controversy arose under the workmen's compensation law of the state of New York (Laws 1913, c. 816; Laws 1914, cc. 41, 315, which in effect was compulsory both upon the employer and the employee and contained none of those features of voluntary participation and contract which are prominent in our statute. The Southern Pacific Company owned a railroad in the State of New York and also a steamer plying between the ports of New York and Galveston, Texas. As stated in the opinion under consideration, one of the effects of the act as construed by the state courts of New York was that "no ship may load or discharge her cargo at a dock therein without incurring a penalty, unless her owners comply with the act." The Southern Pacific Company, the owner of the ship, was a Kentucky corporation. Jensen, a longshoreman, was employed on board the ship in assisting to discharge cargo and while so engaged was accidentally killed. The state court awarded

104 Or.—7

his widow and minor children compensation under
the act. The Supreme Court of the United States
held that under those circumstances the act as con-
strued by the state courts was unconstitutional as
interfering with the admiralty jurisdiction of the
United States, and in the absence of any provision
in the act concerning the consent of the parties it is
difficult to see how it could have held otherwise. To
have done so would have made every foreign vessel
entering the port of New York at once liable to
pay compensation under the laws of the state, with-
out the consent of its owners, an obligation unknown
to admiralty and one seriously affecting those "rules
of the sea whose uniformity is essential."

Another case is *Knickerbocker Ice Co.* v. *Stewart,*
253 U. S. 149 (64 L. Ed. 834, 40 Sup. Ct. Rep. 438,
11 A. L. R. 1145), which also arose from an attempt
to apply the compulsory New York compensation act
to a case of purely maritime cognizance. Stewart,
while in the employ of the plaintiff in error as a
barge man, fell into the Hudson River and was
drowned. His widow, the defendant in error, claimed
under the New York compensation act and was given
an award by the state courts. On writ of error to
the Supreme Court of the United States it was
contended that the objections to the Employers'
Liability Act which were the basis of the reversal
in *Southern Pacific Co.* v. *Jensen, supra,* had been
obviated by the clause in the act passed by Con-
gress October 6, 1917, which among other matters
contained the following:

"Saving to suitors in all cases the right of a com-
mon-law remedy, where the common law is competent
to give it, *and to claimants the rights and remedies
under the workmen's compensation law of any state.*"

The Supreme Court of the United States held in substance that it was not competent for Congress to subtract from the admiralty jurisdiction conferred by the Constitution, and that the saving clause above recited did so and was therefore void. Among other comments is this significant remark:

"Other difficulties hang upon the unexplained words 'workmen's compensation law of *any* state.'"

We do not understand the court as holding that an employer and an employee may not as between themselves contract to take out a form of accident insurance which will be the measure of the liability of the employer in case of accident, and preclude the necessity of litigation in the federal courts, which is the case here presented. The method is a beneficient one, insuring to every employee a certain remedy and fair compensation instead of difficult litigation, a doubtful remedy and in many cases resulting in no compensation.

In *Western Fuel Co.* v. *Garcia,* 257 U. S. —— (66 L. Ed. 97, 42 Sup. Ct. Rep. 89), case No. 28, decided by the United States Supreme Court December 5, 1921, it was held that a state statute authorizing recovery of damages for death caused by negligence could be enforced in the federal court in a case where the injury was purely a maritime tort and no recovery for such cause was provided for by any federal statute. The court there said:

"As the logical result of prior decisions we think it follows that where death upon such waters follows from a maritime tort committed on navigable waters within a state whose statutes give a right of action on account of death by wrongful act, the admiralty courts will entertain a libel *in personam* for the damages sustained by those to whom such right is given. The subject is maritime and local in char-

acter and the specified modification of or supplement to the rule applied in admiralty courts when following the common law, will not work material prejudice to the characteristic features of the general maritime law, nor interfere with the proper harmony and uniformity of that law in its international and interstate relations: *Southern Pacific Co.* v. *Jensen, supra.*"

It cannot be shown that in the instances brought to our notice by the present appeal, the allowance of the stipulated award will in any manner "work material prejudice to the characteristic features of the general maritime law, nor interfere with the proper harmony and uniformity of that law in its international and interstate relations." It is not the policy of the law international or otherwise to pull parties into court by the hair when they have agreed between themselves upon a method of keeping out and in view of the decision last quoted this ought to terminate the present controversy in favor of the petitioners.

But the petitioners have a concrete case from the same court, the opinion being rendered by the same eminent justices who decided the cases of *Knickerbocker Ice Co.* v. *Stewart and Western Fuel Co.* v. *Garcia, supra.* We refer to the case of *Grant Smith-Porter Ship Co.* v. *Rhode*, 257 U. S. —— (66 L. Ed. 172, 42 Sup. Ct. Rep. 157), United States Supreme Court case No. 35, advance sheets, decided January 3, 1922. This case briefly was this: The Grant Smith-Porter Ship Company was an Oregon corporation engaged in the construction of sea-going vessels at Portland, Oregon. Rhode, the libelant, was a carpenter employed as such in the completion of the vessel, which at the time he was injured had been launched upon the waters of the Willamette

River and substantially completed although not ready for delivery, and the work in which Rhode was engaged was the construction of a bulkhead enclosing certain tanks in the vessel. Upon the occurrence of the injury he libeled the vessel in the United States District Court sitting in admiralty, alleging negligence in the construction and maintenance of a scaffold as the ground for recovering damages. The company, among other defenses, urged the fact that the libelant and the company had before the accident elected to become subject to the Oregon Workmen's Compensation Act. This objection was urged upon exception to the libel and after being overruled (259 Fed. 304) was again insisted upon at the trial (263 Fed. 204), where it was again decided adversely to the defendant. The libelant recovered a judgment and the defendant carried the case to the Circuit Court of Appeals for the Ninth District. That court certified to the Supreme Court of the United States the question as to the effect of the parties' act in consenting to come under the provisions of the state Workmen's Compensation Act, upon the plaintiff's right to recover in admiralty. After a statement of the case the court of appeals propounded for solution the following questions:

"Questions of law concerning which the Circuit Court of Appeals of the Ninth Circuit desires the instruction of the Supreme Court are: 1. Is there jurisdiction in admiralty because the alleged tort occurred on navigable waters? 2. Is libelant entitled because of his injury to proceed in admiralty against respondent for the damages suffered?"

After discussion of the matter from every point of view the court answered the questions as follows:

"Construing the first question as meaning to inquire whether the general admiralty jurisdiction

extends to a proceeding to recover damages resulting from a tort committed on a vessel in process of construction when lying on navigable waters within a state, we answer, yes.

"Assuming that the second question prevents the inquiry whether in the circumstances stated the exclusive features of the Oregon Workmen's Compensation Act would apply and abrogate the right to recover damages in an admiralty court which otherwise would exist, we also answer, yes." 257 U. S. —— (66 L. Ed. 172, 42 Sup. Ct. Rep. 157).

It will be observed that the last paragraph in the opinion practically concedes that but for the fact that the parties had elected to come under the provisions of the compensation act, the jurisdiction in admiralty would have existed, which is what the petitioners contend here. It may also be noted that while the United States District Court, in its second opinion, held that the libelant had an election of remedies, the Supreme Court of the United States held that his remedy in admiralty was abrogated by his consent to come under the terms of the state compensation act, which is going further than is required in the matters here under consideration where all parties are seeking their remedy under the compensation act and have brought this proceeding to avoid the delay, expense and uncertainty of proceeding in admiralty. While it cannot be said that the circumstances in the case last above cited correspond in every detail to the cases at bar, they are nearly enough identical to illustrate the general principle, which is, "that as to certain local matters regulation of which would work no material prejudice to the general maritime law, the rules of the latter might be modified or supplemented by state statutes." Here, as in the case last cited, there is no question of extraterritorial jurisdiction of the

state involved. The contracts for services were made within the state between employers and employees doing business within the state and at or upon waters lying within the boundaries of the state.

2. Counsel for defendant have failed to point out any possible contingency under which an application of the compensation law might prejudicially interfere with the application of any of the rules of maritime law which are so essential to the commerce of the country; and it is not believed that it is possible for such a contingency to arise. On the contrary, the encouragement of such agreements between employer and employee as is contemplated by our compensation laws has a tendency to prevent litigation and in instances like the present to relieve the already overburdened federal courts of the vexatious litigation.

Many cases have been cited bearing more or less remotely upon the questions here discussed, but while they have not been overlooked we prefer to place our decision upon the latest utterances of the United States Supreme Court in cases having a direct bearing upon the present controversy. If we correctly interpret these later opinions, we must find that the law is with the petitioners.

Let there be a mandate directing the Secretary of State to issue the warrants as prayed for.

MANDATE DIRECTED.

Mr. Justice BROWN took no part in hearing or decision of these cases.

BURNETT, C. J., Specially Concurring.—The writs of *mandamus* issued in these causes are designed to compel the Secretary of State to continue to draw warrants on the state treasurer in payment of allowances already made by the state Industrial

Accident Commission as compensation for pure accidents happening on navigable waters within the State of Oregon, without any tortious features, during the course of employment in which both employer and employee had elected to operate under the workmen's compensation law. The reason assigned by the defendant for suspending the periodic issuance of warrants is that as the accidents occurred on navigable waters they gave rise to the constituted "cases" within the admiralty jurisdiction, the adjudication of which is confided by the Constitution of the United States exclusively to the federal courts.

The Workmen's Compensation Act professes to include all casualties, whether accidental or culpable. The defendant insists that in construing the Workmen's Compensation Act we cannot separate nonactionable injuries from those which are actionable on account of negligence or other fault of the employer, with the result that the whole scope of the act is unconstitutional as to whatever kind of injury occurs on navigable waters, whether tortious or accidental. As to that, it is a primary principle that the Constitution of the state is not an enabling organic act, but one that is restrictive, the consequence of which is that the legislative power of the state may be exercised without let or hindrance except as expressed in the Constitution of the state or of the United States. It is also common learning that if an act of the legislative assembly is constitutional in part and unconstitutional in part, effect will be given to the constitutional part and that which is unconstitutional will be disregarded. This may be qualified by the statement that if that which is valid and that which is invalid are so inseparably united that neither can stand alone, the whole act must

perish. It may be remarked, also, that we cannot speculate upon what the legislature might have done if it had been convinced when the bill was before it that it had no authority over maritime torts. The lawmakers clearly intended to include casualties of whatever kind wherever happening to workmen coming within the purview of the act. Grant, as we may, that they could not deal with maritime torts because their adjustment lies with the federal courts of admiralty, yet it must be that pure accidents cognizable by the statute are not so inseparably yoked up with tortious injuries as to defeat the enactment. We must give effect to the legislative intent, so far as that intent may be carried out upon legitimate grounds.

A tort is an actionable injury, dependent upon the fault or negligence of the one inflicting or who is responsible for the injury. The reason given for the constitutional objection to state courts' entertaining actions or suits for damages arising from torts occurring on the navigable waters of the United States is that of Section 2 of Article III of the national Constitution it is laid down as the rule, that:

"The judicial power [of the United States] shall extend to all cases in law and equity, arising under this Constitution, the laws of the United States, and treaties made, or which shall be made or which shall be made under their authority; * * and to all cases of admiralty and maritime jurisdiction. * * "

A "case" within the meaning of the constitutional provision just quoted is outlined in *Cohens* v. *Virginia,* 6 Wheat. (19 U. S.) 264, 278 (5 L. Ed. 257, see, also, Rose's U. S. Notes), where Mr. Chief Justice MARSHALL said:

"A case in law or equity consists of the right of the one party, as well as of the other, and may truly

be said to arise under the Constitution or a law of the United States, whenever its correct decision depends on the construction of either.''

In *Osborn* v. *United States Bank,* 9 Wheat. (22 U. S.) 738, 818 (6 L. Ed. 204, see, also, Rose's U. S. Notes), the same learned justice used this language, in speaking of the clause of the Constitution under consideration:

''This clause enables the judicial department to receive jurisdiction to the full extent of the Constitution, laws and treaties of the United States, when any question respecting them shall assume such a form that the judicial power is capable of acting on it. That power is capable of acting only when the subject is submitted to it, by a party who asserts his rights in the form prescribed by law. It then becomes a case, and the Constitution declares, that the judicial power shall extend to all cases arising under the Constitution, laws and treaties of the United States.''

In *United States* v. *Lee,* 106 U. S. 196, 219 (27 L. Ed. 171, 1 Sup. Ct. Rep. 240, 260, see, also, Rose's Notes), the court said:

''In the case supposed, the court has before it a plaintiff capable of suing, a defendant who has no personal exemption from suit, and a cause of action cognizable in the court,—a *case* within the meaning of that term, as employed in the Constitution and defined by the decision of this court.''

*Smith* v. *Adams,* 130 U. S. 167 (32 L. Ed. 895, 9 Sup. Ct. Rep. 566, see, also, Rose's U. S. Notes), was a case where the court, speaking by Mr. Justice FIELD, undertook to define the terms ''case'' and ''controversy.'' He there said:

''By those terms are intended the claims or contentions of litigants brought before the courts for adjudication by regular proceedings established for

the protection or enforcement of rights, or the prevention, redress or punishment of wrongs. Whenever the claim or contention of a party takes such form that the judicial power is capable of acting upon it, then it has become a case or controversy."

In *Pacific Steam Whaling Co.* v. *United States,* 187 U. S. 447, 451 (47 L. Ed. 253, 23 Sup. Ct. Rep. 154, 155), the plaintiff petitioned the United States District Court for Alaska for license for its vessels and, at the same time, protested against the payment of license fees. The protest being overruled, the plaintiff appealed, and the Supreme Court of the United States refused to consider the appeal, because it was not a case in law or equity, and used this language:

"A case is a suit in law or equity, instituted according to the regular course of judicial proceeding; and when it involves any question arising under the Constitution, laws or treaties of the United States, it is within the judicial power confided to the Union": Citing Story on The Constitution, § 1646.

The court went on at length to point out that there was no adverse party; that no judgment could be rendered whereon execution could issue; and that what was desired of the court was in a sense ministerial, and hence that no "case" had arisen. In *Muskrat* v. *United States,* 219 U. S. 346, 361 (55 L. Ed. 246, 31 Sup. Ct. Rep. 250, 255, see, also, Rose's U. S. Notes), Mr. Justice DAY reviewed the precedents at large, saying:

"That judicial power, as we have seen, is the right to determine actual controversies arising between adverse litigants, duly instituted in courts of proper jurisdiction."

A general discussion of the subject by Mr. Justice HARLAN is found in *Interstate Commerce Commission*

v. *Brimson,* 154 U. S. 447 (38 L. Ed. 1047, 14 Sup.
Ct. Rep. 1125, see, also, Rose's U. S. Notes).

In the cases in the federal courts where the constitutionality of compensation acts has been drawn
in question, there was always litigation between the
claimant and the respondent. In every instance a
tort was involved, giving rise to a cause of action,
or, in other words, a "case" as contemplated by the
national Constitution. In *Thomas* v. *Lane,* 2 Sumn.
1, 9, the libel was against the master and mate of
the brig "Moro" for an assault and battery committed on plaintiff, a seaman in the employ of the
ship, in Havana harbor. · In *Atlantic Transport Co.*
v. *Imbrovek,* 234 U. S. 52, 62 (58 L. Ed. 1208, 51
L. R. A. (N. S.) 1157, 34 Sup. Ct. Rep. 733), the
libelant was a stevedore in the employ of a stevedoring company on board a vessel lying in the port
of Baltimore. The locality · gave the United States
courts jurisdiction as of a maritime tort, and it was ·
there said:

"The libelant was injured because the care required by law was not taken to protect him while he
was doing this work."

This is clearly a case founded upon negligence. In
*Philadelphia etc. R. R. Co.* v. *Philadelphia & Havre
de Grace Steam Towboat Co.,* 23 How. (U. S.) 209,
215 (16 L. Ed. 433, see, also, Rose's U. S. Notes),
the defendant had abandoned the building of a bridge
over navigable water and had left some piles in the
channel, which were cut off only a few feet below the
water line. The plaintiff's vessel was snagged on
these hidden timbers. Again, we have an illustration of a tort based upon the negligence of the defendant. In *The Plymouth,* 3 Wall. 20 (18 L. Ed.
125, see, also, Rose's U. S. Notes), by the negligence

of its officers and crew a fire broke out on the tug "Falcon" as it lay in navigable waters, moored to a dock. There, a tort was involved, predicated upon the negligence of the men in charge of the vessel, but it was held not to be a maritime tort, because the damage was wholly on land. No precedent has been brought to our attention where the injury for which compensation was sought happened as a pure accident, not attributable to the wrongdoing or neglect of anyone, in which compensation was denied on the ground of the supremacy of federal jurisdiction. The opposition to the claims of the petitioners here is not based on their merits or demerits, but entirely upon the proposition that the casualties involved gave rise to "cases" triable only in the admiralty courts of the general government, and that what has been done for the claimants under the Workmen's Compensation Act is an attempted adjudication of those "cases," void because jurisdiction over them is vested exclusively in the federal courts.

The casualties and injuries described in the writs appear to have been pure accidents, for which no one was responsible or to blame. No "case" in law or equity could arise from such untoward events. There is nothing out of which can be constructed a "case" for any court; and since there is no "case," the inhibition of the national Constitution forms no obstacle to the relief here sought by the petitioners.

The writer is unable to concur in the statement in the opinion of Mr. Justice McBRIDE that "there is no doubt of the existence of a contract between the employer, the employee and the state." All that the state has done is by virtue of its legislative power to attach certain consequences to certain kinds of contracts made between employers and employees.

It would be quite as logical to hold that the state is a party to every contract which it requires to be in writing, excluding all proof of it except the writing. The state cannot be said to be a contracting party, because it pays the salaries and expenses of the courts which enforce contracts for the benefit of those who make them. So here, the contribution of the state to the accident fund does not make it a contracting party. In its contractual aspect the matter is the affair of the employer and the employee only. Their relations are based upon contract, that of employer and employee. It was made with reference to the Workmen's Compensation Act. It is stated in the writs that they elected to bring the work under the provisions of that statute. No dispute appears to have arisen between them respecting that relation or the consequences which they themselves appended to it. With perfect amity between the parties the performance of their contract was proceeding on its lawful, natural course according to their original design. It does not lie in the power of any administrative officer of his own motion to interrupt or defeat it.

In this connection it may be noted that the contention of the defendant is to the effect that the statute involved is unconstitutional because one or both of the parties to the imaginary "case" are deprived thereby of the federal remedy afforded in admiralty. Parties may waive even their constitutional rights and remedies. As said in *The Winnebago,* 205 U. S. 354, 360 (51 L. Ed. 836, 27 Sup. Ct. Rep. 509, 511, see, also, Rose's U. S. Notes):

"In a case from a state court, this court does not listen to objections of those who do not come within the class whose constitutional rights are alleged to be invaded; or hold a law unconstitutional because,

as against the class making no complaint, the law might be so held: *People of State of New York ex rel. Natch* v. *Reardon,* 204 U. S. 152 (51 L. Ed. 415, 9 Ann. Cas. 736, 27 Sup. Ct. Rep. 188). See, also, *Supervisors of Albany County* v. *Stanley,* 105 U. S. 305–311 (26 L. Ed. 1044); *City of Lampasas* v. *Bell,* 180 U. S. 276, 283, 284 (45 L. Ed. 527, 21 Sup. Ct. Rep. 368); *Clark* v. *Kansas City,* 176 U. S. 114–118 (44 L. Ed. 392, 20 Sup. Ct. Rep. 284); *Cronin* v. *Adams,* 192 U. S. 108–114 (48 L. Ed. 365, 24 Sup. Ct. Rep. 219, see, also, Rose's U. S. Notes). * *

"If this statute is broad enough to include strictly maritime liens, it can only be held unconstitutional, in a case coming from a state court, where the complaint on that ground is made by the holder of such a demand."

The defendant here has no interest in the award made to the petitioners by the Industrial Accident Commission, or in any claim they ever may have had against their employers. Under the doctrine thus announced in "The Winnebago," it would seem that the defendant is not in any position to question the constitutionality of the state legislation under consideration.

This is remedial legislation and it is a duty of the courts to give it liberal construction so as to accomplish as far as possible the design of the law-making power. While it might be said that in cases of tort happening on navigable waters, the consequent litigation is cognizable only in the United States courts, instances where there is no actionable tort may well be provided for by remedial state legislation. Conceding what does not, however, appear, viz., that there were actionable maritime torts involved, the parties are not compelled to litigate them and thus formulate "cases" to be determined only in the federal courts. If they are willing to compose their af-

fairs amicably either by a lawful compact of their own making or in conformity to a scheme devised by a statute and optional with both of them, it would seem that they ought to be permitted to do so.

For those reasons I concur in the result of the opinion of Mr. Justice McBRIDE.