SIMS v. RIVES.

No. 6574.

United States Court of Appeals for the
District of Columbia.

May 11, 1936.

James J. Laughlin, of Washington, D. C., for appellant.

Leslie C. Garnett, U. S. Atty., and Allen J. Krouse, Asst. U.S.Atty., for appellee.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

STEPHENS, Associate Justice.

This is an appeal from a judgment in the Supreme Court of the District of Columbia discharging a writ of habeas corpus and dismissing the petition upon which the writ had been issued.

The facts are as follows: On December 19, 1934, the appellant was convicted in the United States Police Court of the District of Columbia, on an information charging violation of the District of Columbia. Alcohol Beverage Control Act, approved and effective January 24, 1934, 48 Stat. 319, as amended by the Act approved April 30, 1934, 48 Stat. 654. The petition for the writ asserted that the information charged "transportation of two cases of untaxed whisky." It was agreed by counsel at the bar and stipulated for the record that the actual offense involved was violation of subparagraph (c) of Section 17 of the Liquor Regulations prescribed under the Act referred to. The subparagraph provided:

"(c) Whenever alcohol, spirits, or wines shall be transported in quantities in excess of 12 quarts, or beer in excess of 48 quarts, the person in charge of such transportation shall have in his possession a bill

or memorandum from the seller to the purchaser, showing the names and addresses of the seller and of the purchaser, and the quantity and character of the beverage sold and transported, or a permit from the Board. Upon the demand of any police officer or duly authorized inspector of the Board, the person in charge of such transportation shall exhibit the bill, memorandum, or permit."

A sentence of four months' imprisonment was imposed upon the appellant for violation of this regulation. This sentence has been executed, and the appellant raises no question herein concerning this conviction or the sentence thereunder. The general purpose of the District of Columbia Alcohol Beverage Control Act (hereinafter referred to as the Beverage Control Act) was, as indicated by the title, "To control the manufacture, transportation, possession, and sale of alcoholic beverages in the District of Columbia." Under Section 4, the Alcohol Beverage Control Board was created, with members to be appointed by the Commissioners of the District of Columbia. By Section 7, the Commissioners were authorized to prescribe such rules and regulations not inconsistent with the Act as they might deem necessary to carry out the purposes thereof and to make rules and regulations for the issuance, transfer, and revocation of licenses, and to facilitate and insure the collection of taxes. By Section 23 it was provided that "There shall be levied and collected by the District of Columbia on all beverages, except beer, manufactured by a holder of a manufacturer's license and on all beverages, except beer, purchased by the holder of a wholesaler's or retailer's license, except such beverages as may have been purchased from a licensee under this Act" certain taxes.

At the outset the act provided:

"That the National Prohibition Act, as amended and supplemented, insofar as it affects the manufacture, sale, and possession in the District of Columbia, and the transportation in, into, and from the District of Columbia, of alcoholic beverages, is hereby repealed, with the exception of title III, and section 4 of title II insofar as it affects denatured alcohol."

On January 11, 1934, there had been passed, and on the same date approved, effective, however, as to Title 1 on the day following and as to Title 2 thirty days thereafter,[1] the "Liquor Taxing Act of 1934," 48 Stat. 313. The main purpose of this Act, as indicated by its title, was "To raise revenue by taxing certain intoxicating liquors * * *." It was a general revenue statute stipulating the amount of tax on various types of intoxicating liquors and containing assessment and collection provisions. Section 201 of Title 2 (26 U.S.C.A. § 1152a) provided in part:

"No person shall * * * transport, possess, buy, sell, or transfer any distilled spirits, unless the immediate container thereof has affixed thereto a stamp denoting the quantity of distilled spirits contained therein and evidencing payment of all internal-revenue taxes imposed on such spirits."

By section 207 of Title 2 (26 U.S.C.A. § 1152g) violators:

"shall on conviction be punished by a fine not exceeding $1,000, or by imprisonment at hard labor not exceeding five years, or by both."

On August 15, 1934, appellant was indicted, under two indictments in the Supreme Court of the District of Columbia charging violation of the Liquor Taxing Act of 1934. The specific nature of the charge does not appear from the record, but it was again agreed by counsel at the bar and stipulated for the record that the offense was the transportation of liquor without having affixed to the container thereof the stamp required by Section 201, and that the transportation and the liquor in question were identical with those concerned in the conviction under the Beverage Control Act as above set forth. Under these two indictments, the appellant was convicted. Under one, he was on January 10, 1935, sentenced to a penitentiary for a period of not less than one nor more than three years, and under the other, on March 14, 1935, for a period of not less than one year nor more than fifteen months, the second sentence to run concurrently with the first. These sentences were imposed, however, not according to the terms of the Liquor Taxing Act of 1934,

---

[1] Or later, if on or before twenty days the Secretary of the Treasury proclaimed it impracticable to put the Act into effect on the thirtieth day, and specified a later date.

but under the Act of July 15, 1932, "To establish a Board of Indeterminate Sentence and Parole for the District of Columbia and to determine its functions, and for other purposes," 47 Stat. 696, as amended by the Act of June 5, 1934, 48 Stat. 880. This Act established in the District of Columbia "a board of Indeterminate Sentence and Parole for the penal institutions for said District," whose duty it shall be:

"to examine into the physical, mental, and moral records of the prisoners committed to the penal institutions of the District; receive reports of wardens and other officials, including the psychiatrist; recommend the treatment which, in their opinion, is most conducive to the prisoners' reformation; and provide for a system of determining the proper time of release and the rehabilitation of the ex-prisoner in the community." Section 1.

Subject to the approval of the Commissioners of the District of Columbia, the Board was by the Act authorized to adopt rules and regulations for its procedure and to appoint parole officers. Section 3 provided, so far as here pertinent:

"That hereafter, in imposing sentence on a person convicted in the District of Columbia of a felony, the justice or judge of the court imposing such sentence shall sentence the person for a maximum period, not exceeding the maximum fixed by law, and for a minimum period not exceeding one-fifth of the maximum period fixed by law, and any person so convicted and sentenced may be released on parole as herein provided at any time after having served the minimum sentence * * *."[2]

The Act further provided:

"Sec. 4. That whenever, within the limitations of section 3 of this Act, it shall appear to the Board of Indeterminate Sentence and Parole, from the reports of the prisoner's work and conduct which may be received in accordance with the rules and regulations prescribed, and from the study and examination made by the board itself, that any prisoner serving an indeterminate sentence is fitted by his training for release, that there is a reasonable probability that such a prisoner will live and remain at liberty without violating the law, and in the opinion of the board such release is not incompatible with the welfare of society, said Board of Indeterminate Sentence and Parole may, in its discretion, authorize the release of such prisoner on parole, and he shall be allowed to go on parole, outside of said prison, and in the discretion of the board to return to his home upon such terms and conditions, including personal reports from said paroled prisoner, as said Board of Indeterminate Sentence and Parole shall prescribe, and to remain, while on parole, in the legal custody and under the control of the superintendent of the institution from which the prisoner may have been paroled, until the expiration of the maximum of the term or terms specified in his sentence, less such good-time allowance as is, or may hereinafter be, provided by law; and the said board shall in every parole fix the limits of the residence of such person paroled, which limits, however, may be thereafter changed in the discretion of the board.

"Sec. 5. If said Board of Indeterminate Sentence and Parole, or any member thereof, shall have reliable information that a prisoner has violated his parole, said board, or any member thereof, at any time within the term or terms of the prisoner's sentence, may issue a warrant to any officer hereinafter authorized to execute the same for the retaking of such prisoner. Any officer of the penal institution from which such prisoner shall have been paroled or any Federal officer authorized to serve criminal process within the United States to whom such warrant shall be delivered is authorized and required to execute such warrant by taking such prisoner and returning him to said penal institution.

"Sec. 9. Upon the appointment of the members of said board, the powers of the existing parole board [the Federal Parole Board] over prisoners confined in the penal institutions of the District of Columbia shall cease and determine and all the pow-

---

2 Section 3 of the Act further read: "*Provided, however,* That this Act shall not abrogate the power of the justice or judge to sentence a convicted prisoner to the death penalty as now or hereafter may be provided by law: *Provided further,* That where a justice or a judge of the Supreme Court of the District of Columbia has imposed a life sentence on the prisoner convicted in the District of Columbia, said prisoner serving such sentence shall be eligible to parole as herein provided at any time after having served fifteen years of his life's sentence."

ers of said existing parole board under the authority of the Act of Congress approved June 25, 1910, entitled 'An Act to parole United States prisoners, and for other purposes,' as amended, over said prisoners confined in the penal institutions of the District of Columbia shall be transferred to and vested in said Board of Indeterminate Sentence and Parole * * *." [3]

■ Under the foregoing and by virtue of his assignment of errors, the appellant raises three points: I. That the Liquor Taxing Act of 1934 was repealed by the Beverage Control Act for the District of Columbia; II. That contrary to the Fifth Amendment of the Constitution, he has for the same offense between twice put in jeopardy; III. That his sentences under the Indeterminate Sentence Act are void because (a) that Act is not applicable to offenses against general laws of the United States and (b) if it is, it is unconstitutional as a deprivation of liberty without due process of law contrary to the Fifth Amendment, and also as violative of that clause of the Fourth Amendment providing that "no warrants shall issue, but upon probable cause, supported by oath or affirmation * * *," and also as delegating judicial power to the executive branch of the Government.

I. Was the Liquor Taxing Act of 1934 repealed by the Beverage Control Act? The foundation of the appellant's argument on this point is the language above quoted in the Beverage Control Act, "That the National Prohibition Act, as amended and supplemented * * * is hereby repealed * * *." Appellant asserts that the Liquor Taxing Act is an amendment of or a supplement to the National Prohibition Act, and is therefore expressly repealed by the Beverage Control Act. This point we think is without merit. The Liquor Taxing Act is not, and indeed does not at all purport to be, either an amendment of or a supplement to the National Prohibition Act in any legal sense. It is a revenue law, not a prohibition law. That a law taxing liquor and a prohibition law are different has been recognized by the Supreme Court. United States v. Rizzo, 297 U.S. 530, 56 S.Ct. 580, 80 L.Ed. 844, decided March 9, 1936. Moreover, the Liquor Taxing Act can hardly be regarded as either an amendment of or a supplement to that which had itself at the time of the going into effect of the Liquor Taxing Act lost its constitutional foundation. The Twenty-First Amendment to the Constitution became effective after ratification by three-fourths of the states December 5, 1933; the Liquor Taxing Act, as above pointed out, not until January, 1934.

The Beverage Control Act cannot be said to operate as an implied repeal of the Liquor Taxing Act because, as appears from the statement of the two acts above, their purposes are different, the one being a revenue measure of a general nature, the other a regulatory statute with such tax features as apply only within the District of Columbia. "It is * * * necessary to the implication of a repeal that the objects of the two statutes are the same, in the absence of any repealing clause. If they are not, both statutes will stand, though they may refer to the same subject." United States v. Claflin, 97 U.S. 546, 552, 24 L.Ed. 1082.

■ II. Has the appellant been twice put in jeopardy? In support of an affirmative answer to this question, the appellant relies on Grafton v. United States, 206 U.S. 333, 27 S.Ct. 749, 51 L.Ed. 1084, 11 Ann. Cas. 640, holding that a soldier in the United States Army, tried for homicide before a general court martial, could not, because of the double jeopardy provision of the Fifth Amendment, be also tried for the crime of assassination under the penal code of the Philippines in a court of the province of Iloilo, the facts underlying the two charges being the same, i. e., in each instance the defendant was charged with the killing of the same two Filipinos. It was suggested, as against the plea of double jeopardy, that the defendant had committed two distinct offenses, one against military law and discipline, the other against the civil law, and that a trial for either offense is no bar to a trial for the other. The Supreme Court held to the contrary, resting its decision:

---

[3] Section 9 of the Act further stated: "Provided, however, That in the case of a prisoner convicted of felony committed prior to the effective date of this Act, and in the case of any prisoner convicted of misdemeanor when the aggregate sentence imposed is in excess of one year, said Board of Indeterminate Sentence and Parole may parole said prisoner, under the provisions of this Act, after said prisoner has served one-fifth of the sentence imposed."

"upon the broad ground that the same acts constituting a crime against the United States cannot, after the acquittal or conviction of the accused in a court of competent jurisdiction, be made the basis of a second trial of the accused for that crime in the same or in another court, civil or military, of the same government." [206 U.S. 333, at page 352, 27 S.Ct. 749, 754, 51 L.Ed. 1084, 11 Ann.Cas. 640.]

This case is not determinative of the question here; it is distinguishable for the reason that identical evidence would have supported a conviction upon either of the charges.

In Gavieres v. United States, 220 U.S. 338, 31 S.Ct. 421, 422, 55 L.Ed. 489, the defendant, who, under a Manila ordinance, had been convicted of behaving in a drunken and boisterous manner in a public place open to public view, was held not to have been put twice in jeopardy by a subsequent trial for outraging and insulting a public official by word of mouth and in his presence contrary to a provision of the penal code of the Philippine Islands penalizing such conduct, the acts and words of the accused being in each case the same. The Court said:

"It is to be observed that the protection intended and specifically given [by the double jeopardy clause of the Fifth Amendment] is against second jeopardy for the *same offense*. The question, therefore, is, Are the offenses charged, and of which a conviction has been had in the municipal court and in the Court of First Instance, identical. An examination of the ordinance shows that the gist of the offense under it was behaving in an indecent manner in a public place, open to public view. It was not necessary to charge or prove under the municipal ordinance any outrage, insult, or threat to a public official or agent of the authorities. The charge contained in the record shows that under the municipal ordinance the plaintiff in error was charged with wilfully and unlawfully, in a public street car and in the presence of numerous persons, including ladies, conducting himself in a reckless, indecent and discourteous manner.

"It is true that the acts and words of the accused set forth in both charges are the same; but in the second case it was charged, as was essential to conviction, that the misbehavior in deed and words was addressed to a public official. In this view we are of opinion that while the transaction charged is the same in each case, the offenses are different. This was the view taken in Morey v. Commonwealth, 108 Mass. 433, in which the Supreme Judicial Court of Massachusetts, speaking by Judge Gray, held:

"'A conviction or acquittal upon one indictment is no bar to a subsequent conviction and sentence upon another, unless the evidence required to support a conviction upon one of them would have been sufficient to warrant a conviction upon the other. The test is not whether the defendant has already been tried for the same act, but whether he has been put in jeopardy for the same offense. A single act may be an offense against two statutes; and if each statute requires proof of an additional fact which the other does not, an acquittal or conviction under either statute does not exempt the defendant from prosecution and punishment under the other.'" [220 U.S. 338, at page 341, 342, 31 S.Ct. 421, 422, 55 L.Ed. 489.]

Again, in Morgan v. Devine, 237 U.S. 632, 35 S.Ct. 712, 59 L.Ed. 1153, the defendant pleaded guilty to an indictment containing two counts, the first of which, under Section 192 of the penal code (18 U.S.C.A. § 315), charged the unlawful and forcible breaking into and entering a post office building with the intent to commit larceny, and the second of which charged under Section 190 (18 U.S.C.A. § 313) that the defendant at the same time and place unlawfully and knowingly stole, took and conveyed away money and property of the United States belonging to the post office department. Sentences were imposed under each count. The acts set forth in the second count were performed in the post office under the burglarious entry charged in the first count. It was asserted that the double jeopardy clause forbade confinement after the expiration of imprisonment under the first count. The Supreme Court rejected this point of view, saying:

"this court has settled that the test of identity of offenses is whether the same evidence is required to sustain them; if not, then the fact that both charges relate to and grow out of one transaction does not make a single offense where two are defined by the statutes." [237 U.S. 632, at page 641, 35 S.Ct. 712, 715, 59 L.Ed. 1153.]

These cases control the instant situation. The evidence required to support the conviction of the defendant under the Beverage Control Act is different from that required to support a conviction under the Liquor Taxing Act. Under the Beverage Control Act, *i. e.*, under subparagraph (c) of Section 17 of the Liquor Regulations prescribed thereunder, it would be necessary to prove that the defendant transported the liquor in question without having in his possession a bill or memorandum from the seller to the purchaser, and also that the defendant was transporting in excess of 12 quarts of the liquor; but to support a conviction under the Liquor Taxing Act, it would not 'be necessary to make any showing as to the quantity of liquor, and it would be necessary to prove that there was not affixed to the container of the liquor the required revenue stamp.

III. Are the sentences imposed upon the appellant under the Indeterminate Sentence Act void? (a) Is that Act applicable to persons convicted in the District of Columbia of offenses defined in the general laws of the United States? Appellant asserts that it is applicable only to persons convicted of crimes defined in the District of Columbia Code. There can be no doubt that Congress intended the Act to be applicable to persons convicted in the District of Columbia of crimes against the general laws of the United States. As set forth above, Section 3 provides:

"That hereafter, in imposing sentence on a person convicted in the District of Columbia of a felony, the justice or judge of the court imposing such sentence shall * * *"

impose the same in indeterminate form as further stipulated in the Section. This language is all inclusive, not restrictive. Moreover, if the appellant's view is taken, those prisoners convicted in the District of Columbia of violating general criminal laws of the United States are left without parole privileges because, as above appears under Section 9 of the Indeterminate Sentence Act, all of the powers of the Federal Parole Board under the authority of the Act of Congress approved June 25, 1910, "over prisoners confined in the penal

institutions of the District of Columbia shall cease and determine," and are "transferred to and vested in" the Board of Indeterminate Sentence and Parole created by the Indeterminate Sentence Act. Even if the statute were ambiguous, we could hardly hold that Congress intended such a hiatus.

(b) Is the Indeterminate Sentence Act unconstitutional as a deprivation of liberty without due process of law contrary to the Fifth Amendment, and also as violative of that clause of the Fourth Amendment providing that "no warrants shall issue, but upon probable cause, supported by oath or affirmation * * *," and also as delegating judicial power to the executive branch of the Government?

The Fifth Amendment: Congress has plenary and exclusive power to legislate for the District of Columbia. Clause 17 of Section 8 of Article 1 of the Constitution extends to Congress the power "to exercise exclusive legislation in all cases whatsoever over"[4] the District of Columbia. The United States Supreme Court has in a number of instances recognized this power of Congress. Wight v. Davidson, 181 U.S. 371, 21 S.Ct. 616, 45 L.Ed. 900; Parsons v. District of Columbia, 170 U.S. 45, 18 S.Ct. 521, 524, 42 L.Ed. 943; Shoemaker v. United States, 147 U.S. 282, 13 S.Ct. 361, 37 L.Ed. 170. In Parsons v. District of Columbia, wherein a local assessment statute was held valid, the Court said:

"The legislation in question in the present case is that of the Congress of the United States, and must be considered in the light of the conclusion, so often announced by this court, that the United States possess complete jurisdiction, both of a political and municipal nature, over the District of Columbia." [170 U.S. 45, at page 52, 18 S.Ct. 521, 42 L.Ed. 943.]

In legislating for the District of Columbia, Congress acts with substantially the powers that a state legislature has in legislating for a state. Congress "has the entire control over the District of Columbia for every purpose of government, national or local. It may exercise within the District all legislative powers that the

---

4 The provision empowers Congress: "To exercise exclusive legislation in all cases whatsoever over such district (not exceeding ten miles square) as may, by cession of particular States, and the acceptance of Congress, become the seat of the government of the United States * * *."

legislature of a State might exercise within the State * * * so long as it does not contravene any provision of the Constitution of the United States." Capital Traction Company v. Hof, 174 U.S. 1, 5, 19 S.Ct. 580, 582, 43 L.Ed. 873. See also District of Columbia v. Kraft, 35 App.D. C. 253, 30 L.R.A.(N.S.) 957. It thus follows that, apart from constitutional limitations later to be mentioned applicable to the legislation itself, it was within the power of Congress to pass the Indeterminate Sentence. Act, although it applies only to offenders against the Liquor Taxing Act who are convicted in the District of Columbia and not to offenders against such Act who are convicted outside of the District of Columbia.

Within its plenary power to legislate for the District of Columbia, Congress is, of course, subject to all of the constitutional limitations upon the exercise of Federal power, including the Fifth Amendment. This is recognized in Capital Traction Company v. Hof, and District of Columbia v. Kraft, supra. The Fifth Amendment as applied to the District of Columbia implies equal protection of the laws. Lappin v. District of Columbia, 22 App.D.C. 68. But equal protection of the laws means merely that a law must deal alike with all of a given class within the jurisdiction to which the law is applicable. Gulf, Colorado & Santa Fe Ry. Co. v. Ellis, 165 U.S. 150, 17 S.Ct. 255, 41 L.Ed. 666; Ohio ex rel. Lloyd v. Dollison, 194 U.S. 445, 24 S.Ct. 703, 48 L.Ed. 1062; Lappin v. District of Columbia, supra. The Indeterminate Sentence Act does deal alike with all of the class to which, within the District of Columbia, the law applies, to wit, persons convicted of a felony.

The theory of the appellant seems to be that he, as one convicted of a felony in the District of Columbia, is entitled to be sentenced in the same manner as if he had been convicted of the same felony outside of the District of Columbia, that is to say, he points out that had he been convicted outside the District of Columbia of violating the Liquor Taxing Act, he would have received a straight sentence and not an indeterminate sentence. Even if—contrary to what has been said above—this were in the abstract a proper ground of complaint, the appellant in the instant situation has shown no concrete injury. As to the sentences themselves, the two concurrent sentences imposed as a result of the Indeterminate Sentence Act involved a maximum of three years and a minimum of one. What might have been imposed upon the appellant had the Indeterminate Sentence Act not been applicable to him, is a speculative question; but he could, according to the penalty provisions of the Liquor Taxing Act, have been subjected to a fine not exceeding $1,000 or to imprisonment at hard labor not exceeding five years, or to both. See Title 2, § 207 (26 U.S.C.A. § 1152g), supra.

As to the appellant's parole privileges, under the Indeterminate Sentence Act he is eligible for parole after serving the minimum sentence imposed, in this case one year. Indeterminate Sentence Act, § 3, supra. If sentenced under the Liquor Taxing Act, irrespective of the Indeterminate Sentence Act, the appellant would not have been eligible for parole until he had served one-third of the straight sentence imposed. See Act June 25, 1910, c. 387, § 1, 36 Stat. 819, as amended by Act of January 23, 1913, c. 9, 37 Stat. 650 (18 U.S.C.A. § 714). It is again speculative to say what this might have been. But had it been the maximum of five years, his parole privileges would not have arisen until twenty months had been served. It is suggested by the appellant that with respect to the lesser of the two concurrent sentences, the one for not less than one year nor more than fifteen months, he is prejudiced in his parole privileges compared with those to which he would have been eligible had he received a straight sentence of fifteen months; that is to say, appellant points out that under the sentence of one year to fifteen months, he is eligible for parole only at the expiration of the minimum of the one year, whereas, had he been sentenced under a straight sentence of fifteen months, he would have been eligible at the end of one-third thereof, or five months. This asserted injury is theoretical only. The lesser of the two sentences imposed has, because it is concurrent with the greater, no practical effect except under the contingency of the greater being void, and there is no contention here by the appellant that as between the two sentences the greater is void.

As to the appellant's good conduct rights, appellant asserts that under his sentences imposed by virtue of the Indeterminate Sentence Act, he will be deprived

of good conduct deductions. These arise under the Act of March 3, 1875, c. 145, § 1, 18 Stat. 479, as amended by the Act of March 3, 1891, c. 529, § 8, 26 Stat. 840, as amended by the Act of June 21, 1902, c. 1140, § 1, 32 Stat. 397 (18 U.S.C.A. § 710), and under the Act of May 27, 1930, c. 340, § 8, 46 Stat. 392 (18 U.S.C.A. § 744h). It is not made apparent that anything in the Indeterminate Sentence Act forbids offenders upon whom sentences are imposed in indeterminate form to receive good conduct deductions. It is this Act which is under attack here, not the good conduct statutes. It may be proper to add, however, that it is not made apparent that anything in the good conduct deduction statutes themselves makes them inapplicable to offenders who have been subjected to sentences in indeterminate form.

The Fourth Amendment: Appellant asserts that Section 5, supra, of the Indeterminate Sentence Act, providing for the issuance of warrants by the Parole Board or a member thereof for the retaking of prisoners who have violated parole is unconstitutional as violative of the provision of the Fourth Amendment that "no warrants shall issue but upon probable cause supported by oath or affirmation," for lack of provision for oath or affirmation of probable cause for the retaking of the prisoner. Appellant is not in a position to raise this point. He has not been paroled and retaken on warrant. "Not a law alone, but a law and its incidence, are necessary to a justiciable right or injury." Clark v. Kansas City, 176 U.S. 114, 118, 20 S.Ct. 284, 286, 44 L.Ed. 392.

Delegation of judicial power to the executive branch of the Government: Appellant asserts that the powers of the Board of Indeterminate Sentence and Parole are judicial in nature and that no standards have been set up for their exercise. We think this point without merit. It is true that the Parole Board is given wide powers of discretion, but essentially its function is administrative, not judicial. It has to do with the treatment of prisoners after sentence.

In accordance with the foregoing, the judgment of the trial court discharging the writ of habeas corpus and dismissing the petition upon which the writ had been issued is

Affirmed.