## SOUTER *vs.* THE SEA WITCH.

An act of the legislature authorized the issuing of attachments against boats and vessels " used in navigating the waters of this state ;" and *held*, that the *Sea Witch*, which belonged to the port of New York, was intended for the New York and China trade, had been in the harbor of San Francisco but a few days, and was never otherwise *used in navigating the waters of this state* than by sailing into the harbor of San Francisco from the ocean, was not, within the meaning of the statute, a boat or vessel *used in navigating the waters of this state.*

Where a statute provides a remedy not known to the common law, and by which no personal notice to the person proceeded against is required, the statute should receive a strict construction and not be extended to cases which do not clearly fall within its language. *Per* BENNETT, J.

A statute should be construed so as to give effect and meaning, if possible, to every clause and word contained in it. *Per* BENNETT, J.

APPEAL from the superior court of the city of San Francisco. The proceeding was commenced under an act of the legislature passed April 10, 1850, providing for the collection of demands against boats and vessels, by which any person having a demand belonging to one of four different classes enumerated in the statute, might, at his option, instead of proceeding against the master, agent, owner, or consignee, institute suit against the boat or vessel by name, and have a warrant of attachment against her, her tackle, apparel, and furniture. The demand of the plaintiff belonged to one of the classes enumerated in the statute; and the superior court held that the *Sea Witch* was a vessel *used in navigating the waters of this state*, and gave judgment against her for the amount of the plaintiff's demand, from which judgment an appeal was taken to this court.

Souter *v.* The Sea Witch.

The point on which the judgment was reversed by this court was, that the *Sea Witch* was not a " vessel used in navigating " the waters of this state," within the meaning of that phrase in the statute ; and so far as that point is concerned, the facts are sufficiently stated in the opinion of the court.

*John A. McDougal,* (attorney general,) for the plaintiff.

*M. H. McAllister,* for the defendant.

*By the Court,* BENNETT, J.  This was a proceeding under the " act providing for the collection of demands against vessels " and boats."  The first section enacts that " every boat and " vessel used in navigating the waters of this state" shall be liable to be proceeded against by attachment, in the manner prescribed.

The *Sea Witch* belonged to the port of New York, was a transient ship, had been in the harbor of San Francisco but a few days, and was intended for the New York and China trade. She was never otherwise used in navigating the waters of this state than by sailing into the harbor of San Francisco from the ocean.  The question is, whether she is one of that class of vessels designated in the act.  We think she is not.

The remedy given by the act, being strictly a statutory remedy, and of a character not recognized by the common law, and requiring no personal notice to the person proceeded against, ought not to be extended to cases which do not clearly fall within the language of the statute.  Courts hold that such statutes should be strictly construed. (2 *Cow. Rep.* 419, 420; 15 *Mass. Rep.* 205, 206.)

If a ship whose employment is on the high seas, because she enters the harbor of San Francisco, is to be considered as belonging to the description of vessels mentioned in the statute, then every vessel that may, from any cause, be found upon waters within the territorial limits of the state, must be embraced within the meaning of the act.  But such construction would, under the words " used in navigating the waters of this state," be sense-

less and nugatory. The meaning of the statute would be the same without them as with them. If the legislature had intended that the provisions of the statute should be extended to such a case as the present, they would have said in general terms, that every boat and vessel should be liable, or that every boat and vessel found upon the waters of this state should be liable, without using the restrictive language which they have employed. We see no possible way, in which any force or effect can be given to the clause under consideration, if the statute can be extended to this case. It is, however, a well settled rule of interpretation, that a statute must be construed so as to give effect and meaning, if possible, to every clause and word. That vessels which are confined in their usual and substantial employment to interior navigation, are the only boats and vessels embraced within the descriptive words of the statute, seems to be an interpretation plain and intelligible, which neither enlarges nor limits the object and meaning of the act. And such, we doubt not, was the intention of the legislature. They meant by these words to limit the operation of the act, so as to avoid a conflict between the state and federal authorities as to jurisdiction of actions concerning maritime contracts and maritime torts.

In the *Steamboat Orleans* v. *Phoebus,* (11 *Peters,* 175,) it was decided, that the admiralty had no jurisdiction over a vessel not engaged in maritime trade and navigation, though on her voyages she may have touched at one *terminus* of them in tide water, her employment having been substantially on other waters, and that the true test of the admiralty jurisdiction was, whether the vessel was engaged, substantially, in maritime navigation or in interior trade, not on tide waters. In that case the steamboat, although the *terminus* of her voyage was upon tide water, was used exclusively in trade and navigation upon the waters of the Mississippi and its tributary streams, and was not employed or intended to be employed in navigation or trade on the sea or on tide waters, and it was held that the admiralty jurisdiction did not attach. In the case before us the *Sea Witch,* although her *terminus* was upon waters within the territorial

limits of this state, was employed exclusively in trade and navigation upon the high seas, and was not used or intended to be used in navigation upon the interior waters of the state. The admiralty jurisdiction of the federal courts would consequently extend over her—with which jurisdiction it was the intention of the legislature to avoid all conflict.

We think that the *Sea Witch* was not a " vessel used in navigating " the waters of this state" within the meaning of the attachment act, and the judgment should therefore be reversed.

Ordered accordingly.