Submitted on briefs on motion to dismiss appeal. Motion denied October 2, argued December 7, 1923, affirmed February 19, rehearing denied March 11, 1924.

## W. L. SPITZER *v.* "ANNETTE ROLPH," A VESSEL, AND ROLPH NAVIGATION & COAL CO., A CORPORATION.

(218 Pac. 748; 223 Pac. 253.)

**Appeal and Error—Parties to Undertaking not "Adverse Parties," Entitled to Notice of Appeal Unless Parties to the Suit—"Appearance."**

1. Plaintiff sued defendant ship, under Section 10281, Or. L., to enforce a lien for injuries due to defendant's negligence. The owner, the charterer, together with a surety company, entered into an undertaking to satisfy any judgment for plaintiff, as provided in Section 10289, Or. L. Section 550, Or. L., provides that notice of appeal shall be served on such adverse parties as have appeared in the suit. *Held,* that the sureties are not adverse parties, nor have they appeared, so as to entitle them to notice of appeal.

**Shipping—Boat Lien Law Held not Invalid.**

2. Boat Lien Law, Section 10281 et seq., Or. L., as applied to an ocean-going vessel navigating the waters of the state, is not invalid as interfering with admiralty jurisdiction of the United States courts.

**Commerce—Boat Lien Law not Intended to Apply Only to Vessels in Intrastate Commerce.**

3. Boat Lien Law, Section 10281 et seq., Or. L., was not intended to apply only to vessels exclusively engaged in intrastate commerce on waters of the state.

---

1. Power of state to create and enforce liens on ships for non-maritime tort, see note in 20 A. L. R. 1095.

Admiralty—Rule Stated as to Power of State to Prescribe Remedy for Wrongs by Foreign Vessels Within State Jurisdiction.

4. For any wrong committed by a foreign vessel within a state jurisdiction for which no remedy exists in admiralty, the state may prescribe a remedy whenever such local legislation would not necessarily work material prejudice to general maritime law or interfere with the proper harmony or uniformity of that law in its international or interstate relations.

Admiralty — Injury Occurring on Land not Subject of Remedy in Admiralty.

5. Where an injury occurs on land, it cannot be the subject of a remedy in admiralty.

Master and Servant—Workmen's Compensation Act Held Inapplicable to Foreign Owned Vessel While Taking on Cargo as Part of Interstate Business.

6. In view of Workmen's Compensation Act (Sections 6611, 6612, 6614 and 6635, Or. L.), an injury to a servant of a foreign vessel, owned in another state while taking on cargo in this state as part of interstate business, was not within the Workmen's Compensation Act; such a foreign owned vessel not being subject to the provisions of the act.

From Multnomah: GEORGE W. STAPLETON, Judge.

In Banc.

MOTION DENIED.

For the motion, *Mr. John W. Kaste.*

*Contra, Messrs. Platt & Platt, Montgomery & Fales.*

BURNETT, J.—1. The plaintiff claiming to have been injured by the negligent management of the tackle of the defendant ship, "Annette Rolph," while he was on a dock in the City of Portland loading

5. Admiralty jurisdiction in tort, see note in 13 Ann. Cas. 1216.

6. Limitation of application of workmen's compensation statute by federal laws, see notes in L. R. A. 1916A, 461; L. R. A. 1917D, 85; L. R. A. 1918C, 474.

Applicability of state compensation act to injury within admiralty jurisdiction, see notes in Ann. Cas. 1916B, 88, 280; Ann. Cas. 1917E, 919; Ann. Cas. 1918B, 661; 25 A. L. R. 1029.

Power of Congress to permit application of state workmen's compensation laws to injuries within admiralty jurisdiction, see note in 11 A. L. R. 1155.

See 1 C. J., pp. 1252, 1285; Workmen's Compensation Acts, p. 45; 36 Cyc. 164.

lumber upon the vessel, brought suit under Section
10281, Or. L., directly against the vessel, to enforce
his lien created by that Section, "for damages or in-
juries done to" his person by the vessel.

Subsequent to the commencement of the suit, the
Rolph Navigation & Coal Co., owner, and the Mc-
Cormick Steamship Line, a corporation, agent and
charterer, of the vessel together with American Sur-
ety Co., entered into an undertaking conditioned to
satisfy the amount which should be adjudged to be
due and owing to the plaintiff on the determination
of the action, together with all costs accruing, all
as provided in Section 10289, Or. L.   The vessel was
thereupon released from the detention of the sheriff
who had seized it by virtue of a warrant issued at the
beginning of the suit.   The owner appeared on be-
half of the ship and answered the complaint as per-
mitted in Section 10287, Or. L.   After reply and a
hearing on issues joined, the court rendered a decree
in favor of the plaintiff in the sum of $3,500 and
ordered that the vessel with its tackle, apparel and
furniture be sold and the proceeds thereof applied
to the satisfaction of the decree, together with costs
and disbursements.   At the same time the Circuit
Court rendered a judgment upon the undertaking
in the same amount.

The vessel by name, and the owner thereof, the
Rolph Navigation & Coal Co., served a notice of
appeal on the plaintiff alone, and did not serve the
same on the McCormick Steamship Line or the
American Surety Co.   The plaintiff now moves to
dismiss the appeal on the ground that the other par-
ties who signed the undertaking and were not served
with notice of appeal are parties adverse to those
appealing and should have had notice.

It is said in Section 550, Or. L., relating to taking an appeal,

"If the appeal is not taken at the time the decision, order, judgment or decree is rendered or given, then the party desiring to appeal may cause a notice, signed by himself or attorney, to be served on such adverse party or parties as have appeared in the action or suit, or upon his or their attorney, at any place in the state, and file the original with proof of service indorsed thereon, with the clerk of the court in which the judgment, decree or order is entered."

Not only the vessel but also all the signers of the undertaking are alike interested in the defeat of the decree of the Circuit Court. Their hostility to that determination is identical. The plaintiff has not appealed and there can be no modification in his favor in this court: *Caro* v. *Woolenberg,* 83 Or. 316 (163 Pac. 94); *Crumbley* v. *Crumbley,* 94 Or. 617 (186 Pac. 423); *Johnson* v. *Prineville,* 100 Or. 105 (196 Pac. 817). This being a suit in equity, as held in *Cordrey* v. *Steamship Bee,* 102 Or. 636 (201 Pac. 202, 20 A. L. R. 1079), the issue on the appeal will be tried *de novo* in this court. Affected as it is by the principle that the plaintiff, not having appealed, cannot have a better decree here than the one rendered in the court below, the position of the defendants cannot be made worse than it already is. Any modification of the decree, therefore, would affect them favorably.

It is argued that the defendants in the judgment, who have not been served with notice of appeal, have a right to pay the judgment and so stop the litigation. This right, however, is identical in all the parties to the judgment on the undertaking. Something is said in the argument about the right of contribution affecting the question. That right, how-

ever, is not determined by the judgment itself. For aught that appears, the agreement may have been that the owner of the vessel would pay the entire judgment based upon the undertaking. It is possible that it was stipulated that one of the other parties should pay it. As between the individuals concerned at present and under the relations now involved, the question of contribution does not enter into the calculation. Where the matter of contribution and its proportions are determined by the decree itself, the argument might have some effect, but no such provision is inserted in this decree and it depends upon the contract between the parties themselves, independent of the decree. In short, all the individuals who signed the undertaking have identical rights and are alike hostile to the enforcement of the decree. For the purposes of appeal, none of them can occupy the contradictory position of being at once in favor of the extinction of the decree and at the same time in favor of its enforcement.

There is another reason why the appeal should not be dismissed. The statute only requires notice "to be served on such adverse party or parties as have appeared in the action or suit." In *Williams v. Pacific Surety Co.*, 70 Or. 208 (139 Pac. 934), it was held that one who has signed an undertaking in a case does not thereby appear therein and hence that it was not necessary to serve notice of appeal on such an individual. Appearances as employed in this statute is predicated of persons in favor of or against whom allegations are made in the pleadings and who are called upon to prosecute or defend. Hence those who merely signed the undertaking did not thereby "appear" so as to require service upon them of the notice of appeal.

Such cases as *Templeton* v. *Morrison,* 66 Or. 493 (131 Pac. 319, 135 Pac. 95); *Smith* v. *Burns,* 71 Or. 133 (135 Pac. 200, 142 Pac. 352, Ann. Cas. 1916A, 666, L. R. A. 1915A, 1130), and *Southwestern Insurance Co.* v. *Foster,* 85 Or. 206 (165 Pac. 1176), cited here by the plaintiff, are distinguishable from the instant case at least by the fact that in each one of them the person not served was a defendant named as such in the pleadings and summons. In the Templeton-Morrison case, no point was made because one defaulting defendant was not served with notice of appeal. Even under the statute as it stood, requiring notice of appeal, to be served on "adverse party" irrespective of his appearance, before the amendment embodied in the act of February 27, 1899 (Laws 1899, p. 227), Mr. Chief Justice LORD, in *The Victorian,* 24 Or. 121 (32 Pac. 1040, 41 Am. St. Rep. 838), said:

" 'Any party' evidently refers to any person who is party to the action."

That case was a suit against a steamship under the same statute here involved, wherein a decree was rendered against not only the boat, but also against the sureties on the undertaking for its release and it was there held that it was not necessary to serve the sureties when taking an appeal. First "Words and Phrases," page 224, gives this definition:

"An 'adverse party' entitled to notice of appeal is every party whose interest in relation to the judgment and decree appealed from is in conflict with the modification or reversal sought by the appeal; every party interested in sustaining the judgment or decree," citing numerous authorities, including The Victorian.

Individuals whose attitude toward a decree is identical with that of all others who are equally interested in its defeat or its affirmation, cannot be adverse to each other on an appeal. What may happen subsequently by virtue of some contract collateral to that embodied in the undertaking must be treated in the light of the statute in force when it was executed. It may well be doubted whether one signing such an undertaking for a statutory purpose could destroy a judgment upon it by paying it and so cut off his co-obligor's statutory right of appeal.

In brief, although affected by the judgment or decree by virtue of their ancillary engagement they are not parties to the suit. Much less are they adverse parties. Finally, conceding them to be adverse parties, they did not appear in the suit so as to entitle them to notice of appeal. The motion to dismiss the appeal is denied.      Motion Denied.

---

## On the Merits.

(223 Pac. 252.)

Affirmed.

This is a suit instituted against the "Annette Rolph," a steamship, whose owners reside in the State of California and whose home port is San Francisco, in said state, to recover damages for personal injuries sustained by plaintiff while working as an employee of said vessel, on a wharf in Portland, Oregon.

It is admitted that plaintiff was at the time of the injury an employee of said vessel, and no question is raised on the appeal as to the sufficiency of the evidence to establish the fact that while he was so

employed upon the wharf in the business of loading lumber thereon he was, through the negligence of the officers and agents in charge of the vessel, injured as alleged, although these issues were contested upon the trial in the court below.

The facts established on the trial are substantially as follows: The "Annette Rolph" is owned, as above indicated, by the Rolph Navigation & Coal Company of San Francisco and is engaged in the coastwise trade, in connection with another vessel belonging to the same line, between Los Angeles, San Francisco and Portland, making a round trip between these points about every thirty days.

The McCormick Steamship Lines, a corporation, hereinafter termed the "McCormick Company," is the agent in Portland for these boats. The McCormick Company solicits and receives cargo for the boats, purchases all supplies for the boats, and, upon arrival of the vessels, employs longshoremen to unload and reload the vessels. The longshoremen are employed by the vessels and are paid by the vessels. The McCormick Company collects all freight money, and out of this it reimburses itself for the supplies furnished and wages paid to the longshoremen, and for its services receives 10 per cent commission. This commission is paid upon all supplies, freight money and upon all wages paid the longshoremen.

On June 24, 1922, the "Annette Rolph" was moored at the docks of the Eastern and Western Lumber Company on the Willamette River, taking on a cargo of lumber, and for that purpose plaintiff had been employed as a longshoreman, stationed upon the dock. Through the negligence of the ship and its officers, machinery and tackle, plaintiff was seriously

injured and thereafter brought this suit against the "Annette Rolph," pursuant to the Boat Lien Law, being Chapter 19, Oregon Laws, Section 10281, et seq. Upon filing his complaint, plaintiff caused a warrant of arrest to issue; the vessel was seized by the sheriff and thereupon its owner, the Rolph Company, and its agent, the McCormick Company, as coprincipals, with the American Surety Company of New York as surety, executed an undertaking for the release of the vessel and the vessel was released.

Thereafter the Rolph Company, as owner and claimant of the vessel, appeared and filed an answer in the cause in behalf of the vessel and, after certain admissions and general denials, alleged, in substance, as its affirmative defense, that the vessel and the plaintiff at the time of plaintiff's injury were both engaged in a hazardous occupation, as defined by the workmen's compensation law, and that neither the vessel nor the plaintiff had theretofore affirmatively rejected said act, and were therefore automatically under it, and, consequently, the plaintiff's sole remedy was to apply to the state Industrial Accident Commission for compensation.

The trial court found in favor of plaintiff as to the negligence of the vessel and as to his damages; rejected the contention of defendants, and gave judgment for $3,500 and costs; decreed that the lien upon the boat, etc., be foreclosed, and also entered judgment upon the undertaking. From the decree thus entered this appeal is prosecuted.

AFFIRMED. REHEARING DENIED.

For appellants there was a brief over the names of *Messrs. Platt & Platt, Montgomery & Fales* and *Mr. J. Hampton Hodge,* with oral arguments by *Mr. Hugh Montgomery* and *Mr. A. B. Ridgway.*

For respondent there was a brief and oral argument by *Mr. John W. Kaste.*

McBRIDE, C. J.—2, 3. Two questions are raised on this appeal. The first is that the acts above referred to is unconstitutional, if applied to ocean-going vessels, in that it interferes with the admiralty jurisdiction of the United States courts. The second, which is rather a corollary of the first, is that it was only intended to apply to vessels exclusively engaged in intrastate commerce upon the waters of the State of Oregon.

Both of these questions were carefully considered and passed upon in the exhaustive opinion of Mr. Chief Justice BURNETT in *Cordrey* v. *Steamship Bee,* 102 Or. 636 (201 Pac. 202, 20 A. L. R. 1079), and we still adhere to the doctrine laid down in that opinion. The "Annette Rolph" was actually engaged in "navigating the waters of this state" in that, in order to reach Portland from the Pacific Ocean, she was compelled to navigate the Columbia River for eighty-eight miles and the Willamette River for twelve miles, which brings her within the letter of the statute; and this case is clearly within the spirit of it, as it is inconceivable that the legislature would provide a remedy by lien against boats and vessels plying exclusively on Oregon waters and whose owners are known and within reach of ordinary process, and exclude the same remedy in cases where a vessel was only casually here and whose owners resided elsewhere.

4, 5. We take it to be the established doctrine that for any wrong committed by a foreign vessel within a state jurisdiction, for which no remedy exists in admiralty, the state has a right to prescribe a remedy, whenever, to use the language of Mr. Justice

McReynolds, in *Grant Smith-Porter Ship Co.* v.
*Rohde,* 257 U. S. 469 (66 L. Ed. 321, 25 A. L. R.
1008, 42 Sup. Ct. Rep. 157), such local legislation
"would not necessarily work material prejudice to
any characteristic feature of the general maritime
law, or interfere with the proper harmony or uni-
formity of that law in its international or interstate
relations." It is settled beyond controversy that this
injury, having occurred on land, could not be the sub-
ject of a remedy in admiralty.

Granting defendants' contention, we would have
this state of affairs. The plaintiff here could not sue
in admiralty; could not libel or otherwise attach the
vessel; cannot exercise the authority provided by
the state laws; but must pocket his injuries or sue
the negligent officer who caused the injury, who
might be "far away on the bounding billows" before
a judgment or trial could be had. It was in view
of these conditions that the state, as early as 1853,
enacted this statute.

Our attention has been called to the case of *Souter*
v. *The Sea Witch,* 1 Cal. 162, as an authority sus-
taining defendants' contention, but it is not in point.
In that case the "Sea Witch" was a transient vessel
which had merely sailed into the San Francisco
harbor from the ocean on her way from New York
to China. She was not intended for the California
or San Francisco trade, and her presence there was
only incidental. Here the defendant vessel was
actively carrying on trade with Portland, in Oregon
waters; had her regular times for arrival and de-
parture; had her local agent here, and was actually
engaged in taking on a cargo of Oregon products
when the injury occurred at an Oregon wharf, in an
Oregon river. Through her officers and agents she

committed on land a tort against the plaintiff, and there is no legal or moral reason why she should not answer therefor.

The suggestion that our statute is copied from that of California is not accurate. Both statutes are similar to statutes enacted by Massachusetts, New York and other states, framed to meet similar emergencies. It would be difficult to frame a statute upon this subject that would not be similar in some respects to the statutes of other states upon the same subject; but, as already shown, the circumstances in the California case cited are so dissimilar from the circumstances in this case as to render the language of the California case inapplicable here.

The cases cited by defendants' counsel are those arising out of maritime torts, or maritime contracts; but this is neither. This is the case of a local tort committed by the defendants upon the land, and for which maritime law has provided no remedy, and does not, therefore, interfere with those general principles of the administration of maritime law, interstate or international, which it was the intent of the Constitution to preserve to Congress.

We adhere to the rulings of this court in *The Victorian,* 24 Or. 121 (32 Pac. 1040, 41 Am. St. Rep. 838), and *Cordrey* v. *Steamship Bee, supra.* That question is *res adjudicata* in this court.

6. The second proposition, argued with great ingenuity and plausibility by counsel for appellants, is that the parties are subject to the workmen's compensation statute of this state, and that plaintiff's exclusive and only remedy is by application, under that statute, to the state Industrial Accident Commission. While a literal construction of certain phases in the act (Chapter 1, Title XXXVII, Or. L.)

affords at least plausible ground for defendants' contention, yet, taking into consideration its whole scope and purpose as disclosed in the detail of the act, we cannot consistently hold that it was the legislative intent to apply the act to the owners of foreign vessels or vessels owned and having their home port in another state and merely taking on or unloading cargo here as a part of their foreign or interstate commerce. Such a construction would render many of the provisions of the act unworkable.

Section 6611, Or. L., provides that the state Industrial Accident Commission shall have the power to issue and serve, by its representatives, or by any sheriff, subpoenas for the attendance of witnesses, and the production of papers, books, accounts, documents and testimony, and makes it the duty of the Circuit Court judges to compel obedience to such subpoenas. It is quite evident that the language is especially directed to reach employers within the state. How could the commission reach employers in a foreign state or country, to subpoena the employer's record for audit to determine the amount due the fun l on such employer's pay-roll; and how could the Circuit Court enforce obedience to the subpoena beyond the borders of the state?

Section 6612, Or. L., especially provides for issuing subpoenas *duces tecum* to employers, but the legislature must be presumed to know that subpoenas are ineffective beyond the borders of the state.

Section 6614, Or. L., provides that "All persons, firms and corporations engaged as employers in any of the hazardous occupations hereafter specified shall be subject to the provisions of this act"; but most assuredly the legislature intended that such language should be limited in application to those employers

carrying on an industry within the state; and, whether it intended it or not, it was powerless to legislate as to those employers engaged in industries beyond the state's borders.

Section 6635, Or. L., provides that the books, record and pay-rolls of an employer shall always be open to inspection by the commission, and such employer shall furnish to the commission, upon request, a sworn statement of the facts relating to its pay-roll, and failure or neglect to comply with such provisions is punishable as a misdemeanor by fine or imprisonment, or both, and the Circuit Court and any Justice Court has jurisdiction over these offenses. Can it be held that the Oregon legislature either intended or has the power to authorize punishment through the Oregon courts for a misdemeanor committed in California, or Asia, or in Europe?

Even if it were intended by our legislature that vessels engaged in interstate or foreign commerce and owned outside of the state should be made subject to the provisions of the act, such legislation would be nugatory because in derogation of the general maritime jurisdiction of the United States: *Southern Pac. Co.* v. *Jensen,* 244 U. S. 205 (61 L. Ed. 1086, Ann. Cas. 1917E, 900, L. R. A. 1918C, 451, 37 Sup. Ct. Rep. 205); *Knickerbocker Ice Co.* v. *Stewart,* 253 U. S. 149 (64 L. Ed. 834, 11 A. L. R. 1145, 40 Sup. Ct. Rep. 438).

We fail to see the application of the doctrine announced in *State Industrial Acc. Com.* v. *Nordenholt Corp.,* 259 U. S. 263 (66 L. Ed. 933, 25 A. L. R. 1013, 42 Sup. Ct. Rep. 473), to the circumstances disclosed in this case. In that case the deceased, one Insana, was employed by the Nordenholt Corporation to assist in repairing a vessel lying at the dock.

The company, a contracting corporation and presumably a local corporation, had taken a contract to repair the vessel, and while so engaged Insana was killed while in the course of his employment, by an accident occurring on the wharf. It was held that, under these circumstances, the workmen's compensation law was applicable. There was no claim that the vessel which he was repairing, or the owners of it, were subject to the Workmen's Compensation Act.

The rights of a workman here to compensation from the state industrial accident fund arise from a contract, either express or implied, between the employee and employer embraced within the terms of the act: *West* v. *Kozer,* 104 Or. 94 (206 Pac. 542). A foreign owned vessel merely touching here in the course of foreign or interstate commerce is not such an employer.

The decree is affirmed.

AFFIRMED.   REHEARING DENIED.

BEAN, BROWN and McCOURT, JJ., concur.

