Submitted on briefs September 16; reversed October 7, 1941

# HOUSE *v.* STATE INDUSTRIAL ACCIDENT COMMISSION

## (117 P. (2d) 611)

258

Before KELLY, Chief Justice, and BAILEY, LUSK, RAND, ROSSMAN and BRAND, Associate Justices.

*I. H. Van Winkle,* Attorney General, and *Oliver Crowther, C. S. Emmons,* and *C. L. Marsters,* Assistant Attorneys General, for appellant.

*W. W. Schaupp,* of Klamath Falls, for respondent.

BAILEY, J. Marion N. House, while on his way from Tulelake, California, to Portland, Oregon, to

attend a zone meeting of Chevrolet dealers and salesmen, was fatally injured near Bend, Oregon, in an accident involving the automobile in which he was riding as a passenger. He left surviving him his widow, the plaintiff herein, and their minor daughter, aged six years. The widow presented to the Oregon state industrial accident commission a claim for compensation for her husband's death, and upon the commission's denial thereof this action was instituted. From a judgment of the circuit court in favor of the claimant the state industrial accident commission has appealed.

The facts in the case are substantially the following: Turner Chevrolet Company is an Oregon corporation with its principal place of business at Klamath Falls, Oregon. It is there engaged in the sale of new and used motor vehicles, and in connection therewith conducts a garage and repair shop. Sometime prior to the accident above mentioned, Turner Chevrolet Company established a branch business at Tulelake, California, about six miles south of the Oregon boundary. This branch was engaged in practically the same business as that of the home office of the corporation. Compliance had been made by the corporation with the laws of California authorizing foreign corporations to do business in that state. Both the main office and the Tulelake branch had direct franchises from Portland Chevrolet Motor Company for the sale of new Chevrolet motor vehicles in their respective territories.

On or about March 1, 1939, Mr. House, then a resident of California, was employed by Turner Chevrolet Company as a used car salesman at its Klamath Falls place of business, where he worked as such salesman until about July 15, 1939, at which time he was made manager of the Tulelake branch. His contract of em-

ployment as branch manager was made at Klamath Falls in the state of Oregon. Upon assuming his duties at Tulelake Mr. House moved there and was a resident of California until the time of his death.

The Tulelake branch was financed and its policies were determined by the directors of the corporation at Klamath Falls. The branch kept its own set of books and its own bank account, and paid its own employes. It made tax returns to the state of California on the business done by it. The employes of the Tulelake branch were listed as California workmen for purposes of the national social security law. Turner Chevrolet Company had elected to come under the Oregon workmen's compensation law, and paid contributions to the state industrial accident commission for its workmen employed at the Klamath Falls place of business. The corporation also complied with the workmen's compensation law of the state of California relative to the employes of the Tulelake branch.

Once a month the Tulelake branch furnished to the home office at Klamath Falls a monthly statement of the business done by it. The income from both the Tulelake branch and the home office was consolidated for the purpose of making federal income tax returns.

Mr. Turner, president and general manager of Turner Chevrolet Company, testified that employes at the Tulelake branch were not in any way connected with the Klamath Falls business. He was asked if he had not given the following testimony before the industrial accident commission:

"Q. Payrolls kept separately or together? A. Two distinct statements, payrolls and everything, entirely separate. Don't know how to put it any stronger, wasn't any connection whatsoever."

His reply was as follows: "That is right. I would not know whether there was a profit or loss unless they were kept separate." Questioned further in this connection, he gave the following testimony in court:

"Q. They were absolutely separate businesses as far as you were concerned? A. Separate businesses as far as you could make a branch separate."

Mr. Turner testified in regard to Mr. House's trip to Portland that Mr. House as manager of the Tulelake branch received a bulletin from Chevrolet Motor Company in Portland requesting him to attend the meeting. As to that trip he further testified thus:

"Q. And you did not tell him to go up there? A. No. Q. He was doing that under this dealer franchise in Tulelake? A. Correct. Q. And received his notice from the zone headquarters for that? A. Correct. Q. And not under your direction and control; is that right? A. That is correct."

Mrs. House testified that Mr. House was on his way to Portland to see the new 1940 Chevrolet. Her further testimony was as follows:

"Q. Do you know whether he saw Mr. Turner before he went up there, up to Portland? A. Yes, he saw him the night before he went up there. Q. Do you know why he saw him? A. Because I asked him not to go."

The meetings which were held in Portland by Chevrolet Motor Company were not for Oregon dealers and salesmen exclusively, but for an entire zone including parts of Washington and northern California.

Relative to the question of whether Mr. House, after becoming manager of the Tulelake branch performed

any work in the state of Oregon, the record discloses the following:

"Q. [By Mr. Crowther] Now, Mr. Turner, after Mr. House went down and took his employment, from that time until the time he died, did he ever work for you or for the Turner Chevrolet Company in Oregon under your direction and control?

"Mr. Schaupp: Object to that as wholly immaterial. I don't think it is material at all whether he worked in Oregon. That is the position we take on that proposition. He has stated he was employed and worked in California; that is what we agreed, he was employed and working in California.

"Mr. Crowther: It is also agreed, then, he was not up in Oregon?

"Mr. Schaupp: That is agreed. We will stipulate. We don't claim he worked in Oregon."

A stipulation was entered into by counsel representing the respective litigants, which reads in part as follows: "That on the ninth day of October, 1939, Marion N. House, while acting within the scope of his employment as manager of the Tulelake, California, branch of the Turner Chevrolet Company, was traveling as a passenger in a motor vehicle being operated by one John Selby near the city of Bend, in the state of Oregon, and while so traveling received injuries through violent, accidental and external means which resulted in his death; that said accident arose out of and in the course of the employment of the said Marion N. House as manager of the Tulelake, California, branch of the said Turner Chevrolet Company; . . . That said Marion N. House was not employed to work in the state of Oregon but was in the state incidental to and in pursuance of this employment as manager of the Tulelake, California, branch of the Turner Chevrolet Company."

The salesmen employed both by the main office and the branch, who were not the only workmen employed by either, called on prospective buyers and sold automobiles both in Oregon and California. Probably over one-half of the cars sold by the Tulelake branch were sold to residents of Oregon.

In answer to a question as to whether Mr. House while in Oregon on his way to the Portland meeting did any work in Oregon with any power-driven machinery or in connection with any garage in Oregon, this testimony was given by Mr. Turner:

"A. I am sure I could not tell you. Q. So far as your employment was concerned you do not know? A. I could not tell, I do not know. Two-thirds of his work I know was in Oregon because of the selling."

The only fair inference to be drawn from this last statement of Mr. Turner, in view of his testimony previously quoted and the above quoted stipulation, is that he referred to the work of the salesmen of the Tulelake branch, who were under Mr. House's supervision, and did not mean to imply that Mr. House himself performed any work in Oregon.

The question here presented is whether a workman hired by an Oregon employer subject to the Oregon workmen's compensation law, to work at a place of business established in another state, is protected by that law when and while he is in the state of Oregon temporarily and incident to such employment.

In connection with this question we again refer to the recitals of the stipulation that "said Marion N. House was not employed to work in the state of Oregon but was in the state incidental to and in pursuance of this employment as manager of the Tulelake, California, branch of the Turner Chevrolet Company" and

that he was injured while "acting within the scope of his employment as manager of the Tulelake, California, branch of the Turner Chevrolet Company."

■ On approaching a consideration of this problem it is well to bear in mind that little assistance is available from the decisions of other jurisdictions because of the dissimilarity between the Oregon workmen's compensation law and those of other states. This observation has heretofore been made a number of times by this court in construing our act. Under the Oregon workmen's compensation law, employers and employes contribute to a fund which is administered by the state as a trust account out of which compensation is paid to injured workmen or, in cases of death, to their beneficiaries. The rate of contribution paid by an employer is based on the hazards of his business, and the total amount of contributions paid into the fund is governed by the expenses incurred in administering the workmen's compensation law and the sum of awards made under it.

Only six states other than Oregon provide for an exclusive state fund out of which to pay compensation to injured workmen or their beneficiaries. Those states are Arizona, Nevada, North Dakota, Ohio, Washington and Wyoming. In the following states the employer may elect whether to contribute to the state fund or provide other insurance: Colorado, Idaho, Maryland, Montana, New York, Oklahoma, Pennsylvania, Texas, Utah and West Virginia. In the remaining states compensation is provided by the employer's procuring insurance against liability or showing financial responsibility for self-insurance: 4 Schneider's Workmen's Compensation Statutes, Perm. Ed., page 4434. California, included in this last group, in addition permits

employers to obtain protection through payment into a state fund.

■ The Oregon act does not expressly or impliedly extend to operations of a permanent nature conducted outside this state by an Oregon employer subject to the act. There is no provision requiring such an employer to contribute to the accident fund on account of his employes permanently engaged in work outside Oregon. If a workman is engaged to work in this state and as an incident of his employment is required to leave the state temporarily, he is entitled to compensation if injured outside Oregon while acting in the scope of his employment.

Section 102-1731, O. C. L. A., provides in part as follows:

"If a workman employed to work in this state and subject to this act temporarily leaves the state incidental to such employment and receives an accidental injury arising out of and in the course of his employment, he shall be entitled to the benefits of this act as though he were injured within this state, if at the time of the accident he was not subject to the workmen's compensation law of the jurisdiction in which he was injured."

■ By this language the legislature has made it clear that a workman injured outside this state must, in order to be entitled to compensation from the state accident fund, have been employed to perform work in this state and must have left the state only temporarily, as an incident of his employment within the state. Mr. House was not employed to perform work within the state of Oregon and had he been injured in California he would not have been entitled to the benefits of the Oregon workmen's compensation act. It is therefore

apparent that his permanent employment in California prevented him from being entitled to the benefits of the act, at least while he was so employed outside the state.

The New York court of appeals in *Matter of Cameron v. Ellis Construction Co.*, 252 N. Y. 394, 169 N. E. 622, discusses in some detail the application of the workmen's compensation law of that state to employment performed outside the state. After pointing out that nowhere in the workmen's compensation law is there an explicit definition of its territorial scope, the opinion proceeds as follows:

"Nothing in the statute suggests that the state of New York has attempted to stretch forth its arm to draw within the scope of its own regulations the relations of employer and employe in work conducted beyond its borders. Hazardous employment here is regulated by the workmen's compensation law; hazardous employment elsewhere, though connected with a business conducted here, does not come within its scope. Even where the contract of employment is made within the state, we have said that the state 'does not attempt to regulate the duty of foreign employers in the conduct of their business within foreign jurisdictions.' (Matter of Smith v. Heine Boiler Co., supra.) There we were dealing, as in this case, with a foreign employer. The principle is not, however, limited to foreign employers. The statute imposes upon every employer, foreign or domestic, the duty to secure to his workmen compensation for injuries, wherever sustained, arising out of and in the course of employment located here. Absence of a workman from the state in the course of such employment does not interrupt that duty where the duty has been imposed upon the employer under the statute. It has not been imposed upon the employer in connection with employment located outside the state. The test in all cases is the place where the employment is located. * * *

"* * * Where the workman employed in work here is called upon, in the course of his employment, to perform transitory work outside of this state, the employment as a whole remains an employment here. It is otherwise when the workman is employed to work at a fixed place or places outside the state."

■ We have called attention to and quoted from § 102-1731, *supra,* and quoted the above excerpt from the opinion of the New York court of appeals for the purpose of showing that the Oregon workmen's compensation law can not and should not be construed as extending to the work performed by Mr. House while he was in the state of California. Of course, if he had been covered while in California by the Oregon law, he would also have been entitled to its protection while passing through Oregon in connection with his California employment. Before Mr. House would be entitled to the protection of the Oregon law, he must have acquired the status of an employe within this state, which status could not have been attained by him except by rendering service in this state to an employer contributing to the state accident fund.

We are not unaware of the fact that there are numerous decisions of the courts of other states to the effect that when the contract is made in the state where the employer has his place of business, the place where the accident occurs, whether within or without the state, is of no importance. Such is the ruling in *Rounsaville v. Central Railroad Co.,* 87 N. J. L. 371, 94 A. 392, wherein it is stated that, "The place where the accident occurs is of no more relevance than is the place of accident to the assured, in an action on a contract of accident insurance, or the place of death of the assured, in an action on a contract of life insurance."

In New Jersey and other states in which courts have similarly ruled, compensation to injured workmen is not, so far as we have been able to ascertain, paid exclusively from a state fund as in Oregon. In many of the states decisions similar to that of the New Jersey court above cited are based on the wording of the statute expressly extending the protection provided by the employer's insurance to employes wherever working. We do not intend to imply, from what has just been said, that the jurisdictions in which compensation to injured workmen is paid exclusively from state funds do not permit recovery to workmen for injuries suffered in another state, but quite the contrary. However, in order for any workman to recover compensation for injuries suffered outside the state providing the fund, he must have been engaged, when injured, in discharging some duty incident to his employment in such state.

It is argued that Mr. House's contract of employment was entered into in Oregon; that the injury which caused his death occurred in this state; and that since the company which employed him is an Oregon corporation subject to the act and would ultimately receive the benefit, if any, of his trip to Portland, through its branch at Tulelake, Mr. House was, while in Oregon, protected by the Oregon workmen's compensation law.

■■ The fact that Mr. House's contract of employment was made in Oregon can not, under the circumstances here shown, have any effect on the determination of this case. The location of the work is the controlling factor. Mr. House, after becoming manager of the Tulelake branch, was not thereafter in the state of Oregon, so far as the record shows, except to pass through the state on his way to Portland in connection

with his business at Tulelake. The fact that some of his salesmen sold automobiles in Oregon would affect their status only, not his.

In *United States Fidelity & Guaranty Co. v. Industrial Commission*, 99 Colo. 280, 61 P. (2d) 1033, the court, after pointing out that in a prior decision it had been stated that, "In every instance where the contract was made . . . and a substantial portion of the services thereunder were to be, and were, performed in this state, recovery under the act has been upheld," went on to say: "It thus appears that to justify recovery under our law the one essential element is that a substantial portion of the work must be done in this state, but that with this must be combined either an accident in Colorado or a contract in Colorado."

■ In order to receive compensation under the Oregon law the employe must have attained the status of a workman in this state, which he could do only by performing in this state a substantial part of his work. Again referring to the stipulation, we note that Mr. House "was not employed to work in the state of Oregon but was in the state incidental to and in pursuance of this employment as manager of the Tulelake, California, branch of the Turner Chevrolet Company." In view of the facts in this case it is apparent that at the time he was injured Mr. House was not a workman subject to the Oregon workmen's compensation law and entitled to its benefits.

The judgment is reversed and the cause is remanded to the circuit court with instruction to enter there a judgment in favor of the defendant.

KELLY, C. J., and RAND, J., dissent.

KELLY, C. J. (dissenting). The Turner Chevrolet Company, an Oregon corporation, was engaged in the garage business in Klamath Falls in the state of Oregon. This corporation also operated a garage at Tulelake in the state of California. On March 1, 1939, Marion N. House, claimant's decedent was employed by the Turner Chevrolet Company at Klamath Falls, as a salesman. He continued this employment until July 15, 1939, on which date, pursuant to a contract executed in Oregon he assumed the duties of branch manager of the Turner Chevrolet Company's garage at Tulelake in California, in which capacity he was thereafter continuously in the employment of said Chevrolet company until his death.

On or about the 9th day of October, 1939, Mr. House was a passenger on a motor vehicle owned and operated by the Turner Chevrolet Company and was on his way to a state meeting of Chevrolet dealers at Portland, Oregon. While thus traveling to Portland, he suffered an injury in an automobile collision near Bend, in the state of Oregon, which resulted in his death on October 11, 1939.

Mr. House left surviving him his widow, Winona House, and a minor daughter, Nancy Ann House, of the age of six years.

The Turner Chevrolet Company, so far as its employees employed to work in the state of Oregon, had conformed with the provisions of the Workmen's Compensation Act of the state of Oregon.

It is contended by the defendant commission that the contract of employment whereby Mr. House became branch manager of the Turner Chevrolet Company at Tulelake was executed in California, while plaintiff

contends that it was executed in Oregon. Two witnesses other than the plaintiff testified, namely, Mr. Archibald A. Turner, president of the Turner Chevrolet Company, and Mr. Lanier Wallen, salesman at Klamath Falls for that company.

While there is some inconsistency between Mr. Turner's testimony in the trial court, and that which he gave before the defendant commission on rehearing, I think it appears therefrom that the contract of employment was finally consummated in Oregon, although the negotiations therefor were conducted in both states.

Mr. Wallen, a salesman at Klamath Falls of the Turner Chevrolet Company, testified as follows:

"Q. Now then, you know he" [Mr. House] "went to California do you?

A. Yes, I do.

Q. Now do you know how he happened to go to California? What did they do down there when he went to California?

A. Well, you see, originally I took Marion [Mr. House] in to Mr. Balleau who hired him; he was the used car-salesman at that firm. So when the opportunity came down at the Tulelake department, why, he talked it over—Mr. Balleau and I—before he asked Marion to go down on the job. Mr. Turner took Marion down and he spent most of the day there, and then he and I discussed it all that evening at home, about whether he should take it and what kind of an agreement he thought he should get; for instance, his salary and a certain per cent of commission on the profits, and he wanted my idea what he should ask for when he made his agreement, and if I thought he would be better off to take that job or stay there with me; we were doing very good in the used car selling. So Marion and I discussed it all that evening and most of the next day, before he finally agreed to take the job, and they got together on a definite agreement, I know positively

the day after he was down at Tulelake because he and I discussed it and talked it over approximately all night.

Q. Did you live close to where he did?

A. We lived just across the alley from one another, and Marion stayed here in Klamath Falls—I do not know—sometime after he took the job, and drove back and forth morning and night before he found an apartment and moved his family down there.''

\* \* \* \* \* \* \*

''Q. The original contract of Marion House came up here then,—was made in Oregon?

A. That is right. I took him into the office of Mr. Balleau and introduced him. He said: 'When are you ready to go to work?' Mr. House said: 'I might as well go right now, I am here.' He said: 'You take him over to the lot and show him around and he is on the job.'

Q. Now what happened when you went down to California? Did that take a period of several days, waiting and so on?

A. He went down just one day with Mr. Turner. I talked to him before he left and we discussed it. He told me what he thought about the job after he was down and looked it over and wanted my idea, that evening when he got back or the next day;'' \* \* \*

The uncontradicted testimony is to the effect that more cars were sold in the state of Oregon from the Tulelake branch than were sold therefrom in the state of California. Mr. Turner testified that two-thirds of Mr. House's work was in Oregon because of the selling.

The following questions and answers in Mr. Turner's cross examination also disclose that the two selling agencies in suit were not separate and distinct from one another:

''Q. Now so far as the operation and management is concerned, do they have anything in common, other than the setting of policies?

A. Nothing except exchanging parts and anything they might need they get from the parent concern.

Q. Now you do that with other Chevrolet garages for that matter, do you not—trade back and forth?

A. No, not on the same basis. We would not give other garages things at cost."

It appears from the testimony that the Chevrolet company in Portland grants to its dealers what is termed a direct franchise and also another franchise known as an associate franchise. At the time the contract of employment was executed between the Turner Chevrolet Company and Mr. House, and at all times Mr. House worked thereunder at Tulelake, and when the fatal accident occurred, the Tulelake branch had a direct franchise with the Chevrolet company in Portland.

A direct franchise calls for a certain discount which an associate franchise does not get.

When asked whether the direct franchise held by the Tulelake branch had anything to do with the franchise held in Klamath Falls, Mr. Turner, the president of the Turner Chevrolet Company, said: "Nothing other than the investment of this parent concern." The following question was then propounded to him, which he answered as follows: "Q. Well, of course, the parent corporation owns both? A. Yes."

The following question and answer from the testimony of Mr. Lanier Wallen indicates a unity of interest in the business transacted both by the Klamath Falls operation and the Tulelake branch.

"Q. About doing business back and forth over the line,—do you know about that?

A. I know I did all the time; anyway, the salesmen employed here working in this lot; we would go down there and get a car and sell it, or I would drive down

and sell a customer in California; and they would come up and do the same thing here,—their salesmen would come up to our lot and bring customers and sell them cars and they were paid through the office down there. We just worked back and forth; really like having another warehouse where you could draw on stock when you were out away from the firm; I never noticed any distinction. As I say, I sold a number of cars out of their stock which were paid for out of this office, I mean, brought in and showed the stock number on them; paid on their regular check. I never operated out of that business, that particular branch; I went down and sold cars but I always worked out of their Sixth Street lot here in town.''

It is also pertinent to remember that the franchise to the Tulelake branch as well as the franchise to the Klamath Falls operation came from an Oregon corporation, namely, the Portland Chevrolet Motor Company of Portland, Oregon, and not from any concern in California.

Tulelake is but six miles from the boundary line between Oregon and California.

By stipulation made in open court during the trial hereof, the following facts are admitted to be true:

That on the 9th day of October, 1939, Marion N. House, while acting within the scope of his employment as manager of the Tulelake, California, branch of the Turner Chevrolet Company, was traveling as a passenger in a motor vehicle being operated by one John Selby near the city of Bend, in the state of Oregon, and while so traveling received injuries through violent, accidental and external means which resulted in his death; that said accident arose out of and in the course of the employment of the said Marion N. House as manager of the Tulelake, California, branch of the

said Turner Chevrolet Company. That said Marion N. House left surviving him Winona House, his wife, plaintiff herein, and Nancy Ann House, a minor daughter of the age of six years. That said Winona House duly filed her application before the State Industrial Accident Commission, which application was denied, and thereafter she filed her application for a rehearing. Following the rehearing, the commission's formal order rejecting said claim was affirmed, and thereafter, claimant regularly appealed to the circuit court of the state of Oregon for the county of Klamath. No question is raised by either party relative to the necessary steps having been taken to present the claim to the circuit court. That said Marion N. House was not employed to work in the state of Oregon, but was in the state incidental to and in pursuance to this employment as manager of the Tulelake, California, branch of the Turner Chevrolet Company. And that insofar as this case is concerned, the statutes of the state of California, or those applicable to the proper determination of this litigation, are to be considered pleaded and proven.

Mrs. House made application for compensation before the State Industrial Accident Commission of the state of California and her application was denied on the ground that the California State Industrial Accident Commission had no jurisdiction. [End of stipulated facts.]

The major question herein is whether the Turner Chevrolet Company was subject to the Oregon Workmen's Compensation Law in its relation to Mr. House whose services admittedly were performed out of the state of Oregon.

To the point that the Oregon Workmen's Compensation Law applies to Oregon occupations only, de-

fendant cites *Spitzer v. "Annette Rolph"*, et al., 110 Or. 461, 218 P. 748, 223 P. 253.

. As I understand the holding in that case, it is that the owner of a foreign owned vessel while taking on cargo in this state as part of its interstate business is not subject to the provisions of the Workmen's Compensation Act of Oregon. In the case at bar, the employer is an Oregon corporation transacting its principal business in Oregon.

Defendant also cites *Cameron v. Ellis Construction Co. et al.*, 252 N. Y. 394, 169 N. E. 622. The facts in that case differ from those disclosed here in that the employer was a Massachusetts corporation and the injury to the workman was sustained in Canada, while the claim was made before the Workmen's Compensation Commission of New York; nevertheless, the holding is to the effect that under the New York Workmen's Compensation Act an award may not be made for injuries received in the course of employment at a fixed place outside the state. It is admitted in the case at bar that Mr. House was employed by an Oregon corporation and that his injuries were received, not outside, but within the state of Oregon.

To the point that the Turner Chevrolet Company was not subject to the compensation law of Oregon, for its occupation of operating a garage in California, defendant cites the case of *Durrett v. Eicher-Woodland Lumber Co., Inc., et al.*, (La. A.) 140 So. 867, 869, 871. In that case, the two industries affected, the Eicher-Woodland Lumber Company and the Sharps "appear to have discontinued operations in Louisiana altogether, and moved to Mississippi, and have never returned to" Louisiana. "This removal had already taken place before plaintiff was employed. Plaintiff

was employed to work in the state of Mississippi for an established industry in that state, and received his injuries while so employed there.'' The factual situation thus disclosed is different from that which is shown in the instant case.

The case of *Middlebusher v. State Industrial Accident Commission*, 147 Or. 459, 34 P. 2d 325, is also cited by the commission to the point that workmen, to be protected, must be employees in an occupation covered by the Oregon law. The question here is not whether the character of Mr. House's occupation was within the purview of the Oregon statute, but whether the fact that, during the three months immediately preceding his death, his employment required the principal services he rendered to be performed in California, rendered the Oregon Compensation Act inapplicable.

Thus we are confronted with the question whether the Oregon Workmen's Compensation Act may be given extraterritorial effect.

The only provision of our statute, directly dealing with that subject, provides that—

''If a workman employed to work in this state and subject to this act temporarily leaves the state incidental to such employment and receives an accidental injury arising out of and in the course of his employment, he shall be entitled to the benefits of this act as though he were injured within this state, if at the time of the accident he was not subject to the workmen's compensation law of the jurisdiction in which he was injured. Whenever in any appeal or other litigation the construction of the laws of another jurisdiction shall be required, the courts shall take judicial notice thereof. If any such workman shall file, in the jurisdiction in which he is injured, a claim for an accidental injury and the claim shall be denied for the reason that he was not subject to the workmen's com-

pensation law of such jurisdiction, he may file a claim for such injury under this act within 60 days after the order denying his claim became final.'' Vol. 7, O. C. L. A. Sec. 102-1731, p. 652.

It is obvious that the provisions of the foregoing section are not applicable to the facts in the instant case; hence, treating the matter as though no express statutory provision applies thereto, consideration should be given the authorities emanating from other jurisdictions having no provisions .concerning the exercise of extraterritorial jurisdiction.

It is an impressive fact that while there are thirteen sister states having no provision for the extraterritorial application of the statute under consideration, in only one of them [Oklahoma] have the courts construed the act to have no extraterritorial application. In one other such jurisdiction [New Mexico] our attention has not been directed to any decision thereupon.

The following named states have given extraterritorial application to the Workmen's Compensation Act, although in none of them is there a statutory provision to that effect: Colorado, Iowa, Louisiana, Minnesota, Montana, New Jersey, New York, Rhode Island, Washington, Wisconsin and Wyoming. Vol. 1, Schneider's Workmen's Compensation Text, (Perm. Ed.) pp. 485-568, Sections 169, 179, 191, 195, 197, 206, 215, 217 and 218.

The Oklahoma court, as stated, gives a contrary construction to the Oklahoma Workmen's Compensation Act. Ibid, p. 537, section 201.

In the case at bar, the contract of employment was an Oregon contract, that is, one entered into in Oregon between residents of Oregon, where the employee was on his way to Portland, Oregon, from Tulelake, Cali-

fornia, in the course of his employment and while traveling in Oregon, met with a fatal accident. It is true that during the three months immediately preceding his demise, the employee was performing services in Tulelake and vicinity in the state of California; but, as we understand the record, the business of his employer at Tulelake in California was incidental to its main business at Klamath Falls in the state of Oregon. That is to say, the main business was at Klamath Falls and the branch business at Tulelake. He was not employed by any one at Tulelake, or elsewhere, than at Klamath Falls, Oregon. He was under the direction and control of the company at Klamath Falls.

The statute provides that—

"If an employer is subject to this act as to any occupation, all workmen employed by him in such occupation shall be subject to this act as workmen, but not otherwise." Vol. 7, O. C. L. A. sec. 102-1728, p. 646.

It is conceded that the Turner Chevrolet Company was subject to the act. There is no restriction in the section quoted requiring the services to be fully and entirely performed in Oregon. Such service as was involved in making the trip to the place of the fatal accident was in part at least performed in Oregon.

While the call to attend the meeting at Portland came from the Portland Chevrolet Motor Company, the purpose, unquestionably, of the meeting was to stimulate business; and two-thirds of the selling by the Tulelake branch being in Oregon and all of the net profits of its business inuring to the parent company at Klamath Falls, the conclusion is inescapable that such parent company would be benefited by the attendance of Mr. House at such meeting. In other words, in that way and to that extent, when the fatal accident

occurred, Mr. House was engaged in a course of employment of benefit to the parent company.

Of the cases brought to my attention, the one having a factual situation most nearly like the one at bar was decided by the appellate division of the supreme court of New York. An application for leave to appeal from that decision was denied by the court of appeals.

The facts of that case were that a workman was employed in New York by a New York company. After working in New York, he was transferred to a western state and began his employment there. He returned to New York to secure his personal effects and a car which he used in his work. While in New York, he was sent with his car to perform some duty as a result of which he was injured. It was held that his case came within the New York Workmen's Compensation Law. *Lee v. Oswego Falls Corporation, et al.*, 249 App. Div. 911, 292 N. Y. S. 543. Petition for leave to appeal denied, 274 N. Y. 642.

In New York, it has also been held that where a contract was entered into in New York to be wholly performed in Pennsylvania, the New York act is not applicable. *Perlis v. Lederer*, 189 App. Div. 425, 178 N. Y. S. 449.

The following synopsis of the respective holdings in the other states having no provision for the extraterritorial application of the statute in cases wherein the facts were somewhat similar to those in the instant case are worthy of consideration.

New Jersey. Where the contract was made in New Jersey, although the work was to be performed in another state, the statute of New Jersey was held to be controlling. *Foley v. Home Rubber Co.*, 89 N. J. L. 474, 99 A. 624; *Rounsaville v. Cent. R. Co.*, 87 N. J. L.

371, 94 A. 392; Id. 90 N. J. L. 176, 101 A. 182; *Hi-Heat Gas Co. v. Dickerson*, 12 N. J. Misc. 151, 170 A. 44; *Frank Desiderio Sons, Inc., v. Blunt*, 11 N. J. Misc. 494, 167 A. 29; *Sweet v. Austin Co.*, 12 N. J. Misc. 381, 171 A. 684; *In re Spencer Kellogg & Sons, Inc.*, 48 Fed. 2d 311.

Rhode Island. In the case of a carpenter employed in Rhode Island where he worked for a time and then was sent to Connecticut to complete the work and was injured there the Rhode Island statute was applied. *Grinnell v. Wilkinson*, 39 R. I. 447, 98 A. 103, L. R. A. 1917B, 767, Ann. Cas. 1918B, 618.

Colorado. It appears that to justify under the Colorado statute, the one essential element is that a substantial portion of the work must be done in the state of Colorado and with this must be combined either an accident in Colorado or a contract in Colorado. *United States F. & G. Co. v. Indust. Com.*, 99 Colo. 280, 61 P. 2d 1033.

Iowa. Where an employer had his place of business in Iowa and the injury occurred outside of Iowa, the Iowa court held compensation was recoverable under Iowa law. *Pierce v. Bekins V. and S. Co.*, 185 Iowa 1346, 172 N. W. 191; *Cullamore v. Groneweg & Schoentgen Co.*, 219 Iowa 200, 257 N. W. 561; *Elk River Coal & Lumber Co. v. Funk*, 222 Iowa 1222, 271 N. W. 204, 110 A. L. R. 1415.

The right is not impaired by reason of the fact that the employee is engaged in interstate commerce as a truck driver. *Towers v. Watson Bros. Transp. Co., Pieart v. same*, 229 Iowa 387, 294 N. W. 594.

Louisiana. Where the contract was made in Louisiana for the employee to inspect certain property in a foreign country where he was killed, it was held that

the compensation statute of Louisiana should be given extraterritorial effect because the contract was entered into in the state of Louisiana between residents of the state and relief is sought in the courts of the state. *Selser v. Bragmans Bluff Lumber Co.*, (La. A) 146 So. 690; *McKane v. New Amsterdam Casualty Co.* (La. A.) 199 So. 175. See, also, *Abood v. Louisiana Oil Refining Corp.*, (La. A.) 155 So. 484, holding that where the entire service is to be performed in a sister state, even though the contract is entered into in Louisiana, the compensation act of Louisiana is inapplicable; and, calling attention to the fact that the contract considered in *Durrett v. Eicher-Woodland Lumber Co.*, supra, was entered into in Louisiana.

Minnesota. The Minnesota Compensation Act was applied where a traveling salesman lived at and worked out of Mason City, Iowa, while employed by a corporation doing business in Minneapolis. *Brameld v. Albert Dickinson Co.*, 186 Minn. 89, 242 N. W. 465. And in the case of an employee injured in South Dakota, his sales territory, though he reported to a Minneapolis branch office of a Chicago company. *Bradtmiller v. Liquid Carbonic Co.*, 173 Minn. 481, 217 N. W. 680. And in the case of an employee hired in Iowa to work there and then in Minnesota where he was injured. *Ginsburg v. Byers*, 171 Minn. 366, 214 N. W. 55. And where both employer and employee are residents of the state, the contract of employment is made in the state for the employee to work in Iowa where he was injured. *Krekelberg v. Floyd Co.*, 166 Minn. 149, 207 N. W. 193. And in the case of an Ohio corporation, whose northwestern business was "localized" in Minneapolis, out of which branch the employee traveled in North Dakota where he was injured. *Stansberry v. Monitor Stove*

*Co.*, 150 Minn. 1, 183 N. W. 977, 20 A. L. R. 316; *State v. Dist. Court*, 141 Minn. 348, 170 N. W. 218; *State v. Dist. Court*, 140 Minn. 427, 168 N. W. 177; *State v. Dist. Court*, 139 Minn. 205, 166 N. W. 185, 3 A. L. R. 1347; *Severson v. Hanford Tri State Air Lines, Inc.*, 105 Fed. 2d 622.

Montana. The Montana court gave extraterritorial application in a case where both employer and employee resided in Montana, and the employee was hired in Montana. The employee was injured while building a road in Glacier National Park. *State ex rel. Loney v. State Ind. Acci. Com.*, 87 Mont. 191, 286 P. 408.

Washington. The Washington act was held applicable to a case where the employee was in the course of his employment when injured, although at the time of his injury he was in the state of Idaho. The court considered eleven-fourteenths of the employment was in Washington and three-fourteenths in Idaho.

The following is a quotation from the opinion of the supreme court of Washington:

''Any question whether, under the compulsory provisions of the Workmen's Compensation Act, the act applies to workmen employed in this state to do work outside of the state, and who are injured in the course of their employment, is foreclosed by Hilding v. Department of Labor and Industries, 162 Wash. 168, 298 P. 321, 322. The question there presented we stated as follows: 'Can a widow of a man, resident of, and employed in, this state by an employer coming under the operation of the Workmen's Compensation Act, who is injured outside of the state while engaged in the course of his employment, recover compensation out of the industrial insurance fund?'

We answered that question in the affirmative and said: 'The authorities generally hold that, unless the Workmen's Compensation Act expressly provides that it shall have no extraterritorial effect, it applies to

workmen employed in a state to do work outside of the territorial limits of that state.' " *Thompson v. Department of Labor and Industries*, 192 Wash. 501, 73 P. (2d) 1320.

Wisconsin. The Wisconsin court holds that—

"Liability under the Workmen's Compensation Act is, strictly speaking, neither tortious nor contractual in its nature. It is an obligation imposed by law which arises out of the status created by the employment. The liability arises out of the law itself, rather than out of the contract of the parties." * * * "The one essential requisite to liability under the Wisconsin Compensation Act is employment under such circumstances as to create the status of employer and employee under the Wisconsin act. That status arises out of the contract of employment which may be either 'express or implied, oral or written'. Subdivision (4) of section 102.07 of the statutes. It may be made by express agreement it may be implied from the performance of service.

That status is created when service is performed, within the state under a contract of hire, without regard to the question of where the contract was made. Such status may also exist where no service is performed in the state in those cases where both the employer and employee are residents of the state when the contract is made." *Val Blatz Brewing Co. v. Gerard*, 201 Wis. 474, 230 N. W. 622.

Wyoming. The act was applied in the case of a truck driver, who was killed in a foreign jurisdiction while in the regular course of his employment for a resident employer. *Baldwin v. Byrne*, 53 Wyo. 519, 86 P. (2d) 1095.

While Michigan is not nor should it be listed as one of the states having no statutory provision giving extraterritorial effect to its Workmen's Compensation Act, in the case, *Leininger v. Jacobs et al.*, 270 Mich.

1, 257 N. W. 764, the opinion does not suggest that the decision is based upon or affected by a statutory provision. This is a case in which an employer having his principal place of business in Michigan received an application for employment, the applicant being personally present at the principal place of business in Michigan and subsequently by telephoning from Michigan to another state the employer directed his agent to put the applicant to work, which was done, and the work subsequently necessitated the employee coming into the state of Michigan incident to the discharge of his duties and while so engaged in Michigan, the employee sustained injuries arising out of and in the course of his employment which resulted in his death. The supreme court of Michigan held that under such circumstances, the contract was a Michigan contract rather than an Ohio contract, citing *Dudley A. Tyng & Co. v. Converse*, 180 Mich. 195, 146 N. W. 629. The Michigan court also held that inasmuch as the employee had elected to come under the Michigan compensation act, the employee and his dependents were within the provisions of the act; and that the employer was not relieved from liability by reason of the fact that the employee and his dependents were not domiciled in Michigan, citing *Roberts v. I. X. L. Glass Corporation*, 259 Mich. 644, 244 N. W. 188.

We deem this Michigan case closely analogous to the case at bar.

In referring to it, we are not unmindful that the Michigan statute contains the following provisions:

"Such election" [to become subject to the Workmen's Compensation Act] "on the part of the employers mentioned in subdivision two (2) of the preceding section, shall be made by filing with the industrial

accident board hereinafter provided for, a written statement to the effect that such employer accepts the provisions of this act for all his businesses, and to cover and protect all employes employed in any and all of his businesses, including all businesses in which he may engage and all employes he may employ while he remains under this act." Vol. 2, Compensation Laws of Michigan (1929) p. 3009, Section 8412.

"The term 'employe' as used in this act shall be construed to mean: * * * Every person in the service of another, under any contract of hire, express or implied." Ibid, pp. 3010, 3011, Section 8413.

"The industrial accident board shall have jurisdiction over all controversies arising out of injuries suffered without the territorial limits of this state, in those cases where the injured employe is a resident of this state at the time of the injury, and the contract of hire was made in this state, and any such employe or his dependents shall be entitled to the compensation or death benefits provided by this act." Ibid, p. 3042, Section 8458.

It is impressive however that neither in the case of *Leininger v. Jacobs*, supra, nor in the case of *Roberts v. I. X. L. Glass Corporation*, cited therein, was the protection of the act denied because the claimant was not a resident of Michigan. In point of fact, in the *Roberts v. I. X. L. Glass Corporation* case no services were performed by claimant in Michigan and claimant's injury was received outside the state of Michigan.

Plaintiff-respondent herein applied to the California commission for compensation, but that commission refused to take jurisdiction for the reason that the contract of employment was entered into in the state of Oregon. Such action tends to discredit the contention that Mr. House was protected by the terms of the California compensation act.

A point is urged by defendant herein to the effect that the failure of his employer to make contribution to the Oregon compensation or unemployment fund for Mr. House, or to list him in its report to the Oregon commission as employee, bars plaintiff's claim herein. I think not. Upon a different state of facts, this question was decided contrary to defendant's contention in the case of *Lamm v. Silver Falls Timber Co.*, 133 Or. 468, 277 P. 91, 286 P. 527, 291 P. 375.

After carefully considering the testimony, the admitted facts and the authorities cited herein, I think that the decree and judgment of the circuit court should be affirmed.